(Slip Opinion)     OCTOBER TERM, 2007     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HALL STREET ASSOCIATES, L. L. C. *v.* MATTEL, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 06–989.   Argued November 7, 2007—Decided March 25, 2008

The Federal Arbitration Act (FAA), 9 U. S. C. §§9–11, provides expedited judicial review to confirm, vacate, or modify arbitration awards. Under §9, a court "must" confirm an award "unless" it is vacated, modified, or corrected "as prescribed" in §§10 and 11. Section 10 lists grounds for vacating an award, including where the award was procured by "corruption," "fraud," or "undue means," and where the arbitrators were "guilty of misconduct," or "exceeded their powers." Under §11, the grounds for modifying or correcting an award include "evident material miscalculation," "evident material mistake," and "imperfect[ions] in [a] matter of form not affecting the merits."

After a bench trial sustained respondent tenant's (Mattel) right to terminate its lease with petitioner landlord (Hall Street), the parties proposed to arbitrate Hall Street's claim for indemnification of the costs of cleaning up the lease site. The District Court approved, and entered as an order, the parties' arbitration agreement, which, *inter alia,* required the court to vacate, modify, or correct any award if the arbitrator's conclusions of law were erroneous. The arbitrator decided for Mattel, but the District Court vacated the award for legal error, expressly invoking the agreement's legal-error review standard and citing the Ninth Circuit's *LaPine* decision for the proposition that the FAA allows parties to draft a contract dictating an alternative review standard. On remand, the arbitrator ruled for Hall Street, and the District Court largely upheld the award, again applying the parties' stipulated review standard. The Ninth Circuit reversed, holding the case controlled by its *Kyocera* decision, which had overruled *LaPine* on the ground that arbitration-agreement terms fixing the mode of judicial review are unenforceable, given the exclusive grounds for vacatur and modification provided by FAA §§10 and 11.

*Held:*

1. The FAA's grounds for prompt vacatur and modification of awards are exclusive for parties seeking expedited review under the FAA. The Court rejects Hall Street's two arguments to the contrary. First, Hall Street submits that expandable judicial review has been accepted as the law since *Wilko* v. *Swan*, 346 U. S. 427. Although a *Wilko* statement—"the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation," *id.,* at 436–437 (emphasis added)—arguably favors Hall Street's position, arguable is as far as it goes. Quite apart from the leap from a supposed judicial expansion by interpretation to a private expansion by contract, Hall Street overlooks the fact that the *Wilko* statement expressly rejects just what Hall Street asks for here, general review for an arbitrator's legal errors. Moreover, *Wilko*'s phrasing is too vague to support Hall Street's interpretation, since "manifest disregard" can be read as merely referring to the §10 grounds collectively, rather than adding to them, see, *e.g.*, *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 656, or as shorthand for the §10 subsections authorizing vacatur when arbitrators were "guilty of misconduct" or "exceeded their powers." Second, Hall Street says that the agreement to review for legal error ought to prevail simply because arbitration is a creature of contract, and the FAA is motivated by a congressional desire to enforce such agreements. *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 220. This argument comes up short because, although there may be a general policy favoring arbitration, the FAA has textual features at odds with enforcing a contract to expand judicial review once the arbitration is over. Even assuming §§10 and 11 could be supplemented to some extent, it would stretch basic interpretive principles to expand their uniformly narrow stated grounds to the point of legal review generally. But §9 makes evident that expanding §10's and §11's detailed categories at all would rub too much against the grain: §9 carries no hint of flexibility in unequivocally telling courts that they "must" confirm an arbitral award, "unless" it is vacated or modified "as prescribed" by §§10 and 11. Instead of fighting the text, it makes more sense to see §§9–11 as the substance of a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. *Dean Witter, supra,* at 217, 219, distinguished. Pp. 7–12.

2. In holding the §10 and §11 grounds exclusive with regard to enforcement under the FAA's expedited judicial review mechanisms, this Court decides nothing about other possible avenues for judicial enforcement of awards. Accordingly, this case must be remanded for

Syllabus

consideration of independent issues.  Because the arbitration agreement was entered into during litigation, was submitted to the District Court as a request to deviate from the standard sequence of litigation procedure, and was adopted by the court as an order, there is some question whether it should be treated as an exercise of the District Court's authority to manage its cases under Federal Rule of Civil Procedure 16.  This Court ordered supplemental briefing on the issue, but the parties' supplemental arguments implicate issues that have not been considered previously in this litigation and could not be well addressed for the first time here.  Thus, the Court expresses no opinion on these matters beyond leaving them open for Hall Street to press on remand.  Pp. 13–15.

196 Fed. Appx. 476, vacated and remanded.

SOUTER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, GINSBURG, and ALITO, JJ., joined, and in which SCALIA, J., joined as to all but footnote 7.  STEVENS, J., filed a dissenting opinion, in which KENNEDY, J., joined.  BREYER, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–989

———————

## HALL STREET ASSOCIATES, L.L.C., PETITIONER *v.* MATTEL, INC.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 25, 2008]

JUSTICE SOUTER delivered the opinion of the Court.\*

The Federal Arbitration Act (FAA or Act), 9 U. S. C. §1 *et seq.*, provides for expedited judicial review to confirm, vacate, or modify arbitration awards. §§9–11 (2000 ed. and Supp. V). The question here is whether statutory grounds for prompt vacatur and modification may be supplemented by contract. We hold that the statutory grounds are exclusive.

I

This case began as a lease dispute between landlord, petitioner Hall Street Associates, L. L. C., and tenant, respondent Mattel, Inc. The property was used for many years as a manufacturing site, and the leases provided that the tenant would indemnify the landlord for any costs resulting from the failure of the tenant or its predecessor lessees to follow environmental laws while using the premises. App. 88–89.

Tests of the property's well water in 1998 showed high levels of trichloroethylene (TCE), the apparent residue of

———————

\*JUSTICE SCALIA joins all but footnote 7 of this opinion.

manufacturing discharges by Mattel's predecessors between 1951 and 1980. After the Oregon Department of Environmental Quality (DEQ) discovered even more pollutants, Mattel stopped drawing from the well and, along with one of its predecessors, signed a consent order with the DEQ providing for cleanup of the site.

After Mattel gave notice of intent to terminate the lease in 2001, Hall Street filed this suit, contesting Mattel's right to vacate on the date it gave, and claiming that the lease obliged Mattel to indemnify Hall Street for costs of cleaning up the TCE, among other things. Following a bench trial before the United States District Court for the District of Oregon, Mattel won on the termination issue, and after an unsuccessful try at mediating the indemnification claim, the parties proposed to submit to arbitration. The District Court was amenable, and the parties drew up an arbitration agreement, which the court approved and entered as an order. One paragraph of the agreement provided that

> "[t]he United States District Court for the District of Oregon may enter judgment upon any award, either by confirming the award or by vacating, modifying or correcting the award. The Court shall vacate, modify or correct any award: (i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." App. to Pet. for Cert. 16a.

Arbitration took place, and the arbitrator decided for Mattel. In particular, he held that no indemnification was due, because the lease obligation to follow all applicable federal, state, and local environmental laws did not require compliance with the testing requirements of the Oregon Drinking Water Quality Act (Oregon Act); that Act the arbitrator characterized as dealing with human health as distinct from environmental contamination.

Hall Street then filed a District Court Motion for Order Vacating, Modifying And/Or Correcting the arbitration decision, App. 4, on the ground that failing to treat the Oregon Act as an applicable environmental law under the terms of the lease was legal error. The District Court agreed, vacated the award, and remanded for further consideration by the arbitrator. The court expressly invoked the standard of review chosen by the parties in the arbitration agreement, which included review for legal error, and cited *LaPine Technology Corp.* v. *Kyocera Corp.*, 130 F. 3d 884, 889 (CA9 1997), for the proposition that the FAA leaves the parties "free . . . to draft a contract that sets rules for arbitration and dictates an alternative standard of review." App. to Pet. for Cert. 46a.

On remand, the arbitrator followed the District Court's ruling that the Oregon Act was an applicable environmental law and amended the decision to favor Hall Street. This time, each party sought modification, and again the District Court applied the parties' stipulated standard of review for legal error, correcting the arbitrator's calculation of interest but otherwise upholding the award. Each party then appealed to the Court of Appeals for the Ninth Circuit, where Mattel switched horses and contended that the Ninth Circuit's recent en banc action overruling *LaPine* in *Kyocera Corp.* v. *Prudential-Bache Trade Servs., Inc.*, 341 F. 3d 987, 1000 (2003), left the arbitration agreement's provision for judicial review of legal error unenforceable. Hall Street countered that *Kyocera* (the later one) was distinguishable, and that the agreement's judicial review provision was not severable from the submission to arbitration.

The Ninth Circuit reversed in favor of Mattel in holding that, "[u]nder *Kyocera* the terms of the arbitration agreement controlling the mode of judicial review are unenforceable and severable." 113 Fed. Appx. 272, 272–273 (2004). The Circuit instructed the District Court on re-

mand to

> "return to the application to confirm the original arbi-
> tration award (not the subsequent award revised after
> reversal), and . . . confirm that award, unless . . . the
> award should be vacated on the grounds allowable
> under 9 U. S. C. §10, or modified or corrected under
> the grounds allowable under 9 U. S. C. §11." *Id.*, at
> 273.

After the District Court again held for Hall Street and the
Ninth Circuit again reversed,[1] we granted certiorari to
decide whether the grounds for vacatur and modification
provided by §§10 and 11 of the FAA are exclusive. 550
U. S. __ (2007). We agree with the Ninth Circuit that they
are, but vacate and remand for consideration of independ-
ent issues.

## II

Congress enacted the FAA to replace judicial indisposi-
tion to arbitration with a "national policy favoring [it] and
plac[ing] arbitration agreements on equal footing with all
other contracts." *Buckeye Check Cashing, Inc.* v.
*Cardegna*, 546 U. S. 440, 443 (2006). As for jurisdiction
over controversies touching arbitration, the Act does noth-
ing, being "something of an anomaly in the field of federal-
court jurisdiction" in bestowing no federal jurisdiction but
rather requiring an independent jurisdictional basis.
*Moses H. Cone Memorial Hospital* v. *Mercury Constr.
Corp.*, 460 U. S. 1, 25, n. 32 (1983); see, *e.g.*, 9 U. S. C. §4
(providing for action by a federal district court "which,

---

[1] On remand, the District Court vacated the arbitration award, be-
cause it supposedly rested on an implausible interpretation of the lease
and thus exceeded the arbitrator's powers, in violation of 9 U. S. C. §10.
Mattel appealed, and the Ninth Circuit reversed, holding that implau-
sibility is not a valid ground for vacating or correcting an award under
§10 or §11. 196 Fed. Appx. 476, 477–478 (2006).

save for such [arbitration] agreement, would have jurisdiction under title 28").[2]  But in cases falling within a court's jurisdiction, the Act makes contracts to arbitrate "valid, irrevocable, and enforceable," so long as their subject involves "commerce."  §2.  And this is so whether an agreement has a broad reach or goes just to one dispute, and whether enforcement be sought in state court or federal.  See *ibid.; Southland Corp.* v. *Keating*, 465 U. S. 1, 15–16 (1984).

The Act also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. §§9–11.  An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court.[3]  §6.  Under the terms of §9, a court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in §§10 and 11.  Section 10 lists grounds for vacating an award, while §11 names those for modifying or correcting one.[4]

––––––––––

[2] Because the FAA is not jurisdictional, there is no merit in the argument that enforcing the arbitration agreement's judicial review provision would create federal jurisdiction by private contract.  The issue is entirely about the scope of judicial review permissible under the FAA.

[3] Unlike JUSTICE STEVENS, see *post*, at 2 (dissenting opinion), we understand this expedited review to be what each of the parties understood it was seeking from time to time; neither party's pleadings were amended to raise an independent state-law contract claim or defense specific to the arbitration agreement.

[4] Title 9 U. S. C. §10(a) (2000 ed., Supp. V) provides:

"(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(1) where the award was procured by corruption, fraud, or undue means;

"(2) where there was evident partiality or corruption in the arbitrators, or either of them;

The Courts of Appeals have split over the exclusiveness of these statutory grounds when parties take the FAA shortcut to confirm, vacate, or modify an award, with some saying the recitations are exclusive, and others regarding them as mere threshold provisions open to expansion by agreement.[5] As mentioned already, when this litigation

_____

"(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

"(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Title 9 U. S. C. §11 (2000 ed.) provides:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

[5] The Ninth and Tenth Circuits have held that parties may not contract for expanded judicial review. See *Kyocera Corp.* v. *Prudential-Bache Trade Servs., Inc.*, 341 F. 3d 987, 1000 (CA9 2003); *Bowen* v. *Amoco Pipeline Co.*, 254 F. 3d 925, 936 (CA10 2001). The First, Third, Fifth, and Sixth Circuits, meanwhile, have held that parties may so contract. See *Puerto Rico Tel. Co.* v. *U. S. Phone Mfg. Corp.*, 427 F. 3d 21, 31 (CA1 2005); *Jacada (Europe), Ltd.* v. *International Marketing Strategies, Inc.*, 401 F. 3d 701, 710 (CA6 2005); *Roadway Package System, Inc.* v. *Kayser*, 257 F. 3d 287, 288 (CA3 2001); *Gateway Technologies, Inc.* v. *MCI Telecommunications Corp.*, 64 F. 3d 993, 997 (CA5 1995). The Fourth Circuit has taken the latter side of the split in an unpublished opinion, see *Syncor Int'l Corp.* v. *McLeland*, 120 F. 3d 262 (1997), while the Eighth Circuit has expressed agreement with the former side in dicta, see *UHC Management Co.* v. *Computer Sciences*

started, the Ninth Circuit was on the threshold side of the split, see *LaPine*, 130 F. 3d, at 889, from which it later departed en banc in favor of the exclusivity view, see *Kyocera,* 341 F. 3d, at 1000, which it followed in this case, see 113 Fed. Appx., at 273. We now hold that §§10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification.

## III

Hall Street makes two main efforts to show that the grounds set out for vacating or modifying an award are not exclusive, taking the position, first, that expandable judicial review authority has been accepted as the law since *Wilko* v. *Swan*, 346 U. S. 427 (1953). This, however, was not what *Wilko* decided, which was that §14 of the Securities Act of 1933 voided any agreement to arbitrate claims of violations of that Act, see *id.*, at 437–438, a holding since overruled by *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 484 (1989). Although it is true that the Court's discussion includes some language arguably favoring Hall Street's position, arguable is as far as it goes.

The *Wilko* Court was explaining that arbitration would undercut the Securities Act's buyer protections when it remarked (citing FAA §10) that "[p]ower to vacate an [arbitration] award is limited," 346 U. S., at 436, and went on to say that "the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation," *id.*, at 436–437. Hall Street reads this statement as recognizing "manifest disregard of the law" as a further ground for vacatur on top of those listed in §10, and some Circuits have read it the same way. See, *e.g.*, *McCarthy* v. *Citigroup Global Markets, Inc.*, 463 F. 3d

—————

*Corp.*, 148 F. 3d 992, 997–998 (1998).

87, 91 (CA1 2006); *Hoeft* v. *MVL Group, Inc.*, 343 F. 3d 57, 64 (CA2 2003); *Prestige Ford* v. *Ford Dealer Computer Servs., Inc.,* 324 F. 3d 391, 395–396 (CA5 2003); *Scott* v. *Prudential Securities, Inc.*, 141 F. 3d 1007, 1017 (CA11 1998). Hall Street sees this supposed addition to §10 as the camel's nose: if judges can add grounds to vacate (or modify), so can contracting parties.

But this is too much for *Wilko* to bear. Quite apart from its leap from a supposed judicial expansion by interpretation to a private expansion by contract, Hall Street overlooks the fact that the statement it relies on expressly rejects just what Hall Street asks for here, general review for an arbitrator's legal errors. Then there is the vagueness of *Wilko*'s phrasing. Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the §10 grounds collectively, rather than adding to them. See, *e.g.*, *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 656 (1985) (STEVENS, J., dissenting) ("Arbitration awards are only reviewable for manifest disregard of the law, 9 U. S. C. §§10, 207"); *I/S Stavborg* v. *National Metal Converters, Inc.*, 500 F. 2d 424, 431 (CA2 1974). Or, as some courts have thought, "manifest disregard" may have been shorthand for §10(a)(3) or §10(a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers." See, *e.g.*, *Kyocera*, *supra*, at 997. We, when speaking as a Court, have merely taken the *Wilko* language as we found it, without embellishment, see *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 942 (1995), and now that its meaning is implicated, we see no reason to accord it the significance that Hall Street urges.

Second, Hall Street says that the agreement to review for legal error ought to prevail simply because arbitration is a creature of contract, and the FAA is "motivated, first and foremost, by a congressional desire to enforce agree-

ments into which parties ha[ve] entered." *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 220 (1985). But, again, we think the argument comes up short. Hall Street is certainly right that the FAA lets parties tailor some, even many features of arbitration by contract, including the way arbitrators are chosen, what their qualifications should be, which issues are arbitrable, along with procedure and choice of substantive law. But to rest this case on the general policy of treating arbitration agreements as enforceable as such would be to beg the question, which is whether the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration.

To that particular question we think the answer is yes, that the text compels a reading of the §§10 and 11 categories as exclusive. To begin with, even if we assumed §§10 and 11 could be supplemented to some extent, it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally. Sections 10 and 11, after all, address egregious departures from the parties' agreed-upon arbitration: "corruption," "fraud," "evident partiality," "misconduct," "misbehavior," "exceed[ing]. . . powers," "evident material miscalculation," "evident material mistake," "award[s] upon a matter not submitted;" the only ground with any softer focus is "imperfect[ions]," and a court may correct those only if they go to "[a] matter of form not affecting the merits." Given this emphasis on extreme arbitral conduct, the old rule of *ejusdem generis* has an implicit lesson to teach here. Under that rule, when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows. Since a general term included in the text is normally so limited, then surely a statute with no textual hook for expansion cannot authorize contracting parties to supplement review for specific instances of outrageous conduct with review for just any legal error.

"Fraud" and a mistake of law are not cut from the same cloth.

That aside, expanding the detailed categories would rub too much against the grain of the §9 language, where provision for judicial confirmation carries no hint of flexibility. On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies. This does not sound remotely like a provision meant to tell a court what to do just in case the parties say nothing else.[6]

In fact, anyone who thinks Congress might have understood §9 as a default provision should turn back to §5 for an example of what Congress thought a default provision

---

[6] Hall Street claims that §9 supports its position, because it allows a court to confirm an award only "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." Hall Street argues that this language "expresses Congress's intent that a court must enforce the agreement of the parties as to whether, and under what circumstances, a judgment shall be entered." Reply Brief for Petitioner 5; see also Brief for Petitioner 22–24. It is a peculiar argument, converting agreement as a necessary condition for judicial enforcement into a sufficient condition for a court to bar enforcement. And the text is otherwise problematical for Hall Street: §9 says that if the parties have agreed to judicial enforcement, the court "must grant" confirmation unless grounds for vacatur or modification exist under §10 or §11. The sentence nowhere predicates the court's judicial action on the parties' having agreed to specific standards; if anything, it suggests that, so long as the parties contemplated judicial enforcement, the court must undertake such enforcement under the statutory criteria. In any case, the arbitration agreement here did not specifically predicate entry of judgment on adherence to its judicial-review standard. See App. to Pet. for Cert. 15a. To the extent Hall Street argues otherwise, it contests not the meaning of the FAA but the Ninth Circuit's severability analysis, upon which it did not seek certiorari.

would look like:

> "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator. . . such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator. . . ."

"[I]f no method be provided" is a far cry from "must grant . . . unless" in §9.

Instead of fighting the text, it makes more sense to see the three provisions, §§9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can "rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process," *Kyocera*, 341 F. 3d, at 998; cf. *Ethyl Corp.* v. *United Steelworkers of America*, 768 F. 2d 180, 184 (CA7 1985), and bring arbitration theory to grief in post-arbitration process.

Nor is *Dean Witter,* 470 U. S. 213, to the contrary, as Hall Street claims it to be. *Dean Witter* held that state-law claims subject to an agreement to arbitrate could not be remitted to a district court considering a related, non-arbitrable federal claim; the state-law claims were to go to arbitration immediately. *Id.*, at 217. Despite the opinion's language "reject[ing] the suggestion that the overriding goal of the [FAA] was to promote the expeditious resolution of claims," *id.*, at 219, the holding mandated immediate enforcement of an arbitration agreement; the Court was merely trying to explain that the inefficiency and difficulty of conducting simultaneous arbitration and

federal-court litigation was not a good enough reason to defer the arbitration, see *id.*, at 217.

When all these arguments based on prior legal authority are done with, Hall Street and Mattel remain at odds over what happens next. Hall Street and its *amici* say parties will flee from arbitration if expanded review is not open to them. See, *e.g.*, Brief for Petitioner 39; Brief for New England Legal Foundation et al. as *Amici Curiae* 15. One of Mattel's *amici* foresees flight from the courts if it is. See Brief for U. S. Council for Int'l Business as *Amicus Curiae* 29–30. We do not know who, if anyone, is right, and so cannot say whether the exclusivity reading of the statute is more of a threat to the popularity of arbitrators or to that of courts. But whatever the consequences of our holding, the statutory text gives us no business to expand the statutory grounds.[7]

—————

[7] The history of the FAA is consistent with our conclusion. The text of the FAA was based upon that of New York's arbitration statute. See S. Rep. No. 536, 68th Cong., 1st Sess., 3 (1924) ("The bill . . . follows the lines of the New York arbitration law enacted in 1920 . . ."). The New York Arbitration Law incorporated pre-existing provisions of the New York Code of Civil Procedure. See 1920 N. Y. Laws p. 806. Section 2373 of the code said that, upon application by a party for a confirmation order, "the court must grant such an order, unless the award is vacated, modified, or corrected, as prescribed by the next two sections." 2 N. Y. Ann. Code Civ. Proc. (Stover 6th ed. 1902) (hereinafter Stover). The subsequent sections gave grounds for vacatur and modification or correction virtually identical to the 9 U. S. C. §§10 and 11 grounds. See 2 Stover §§2374, 2375.

In a brief submitted to the House and Senate Subcommittees of the Committees on the Judiciary, Julius Henry Cohen, one of the primary drafters of both the 1920 New York Act and the proposed FAA, said, "The grounds for vacating, modifying, or correcting an award are limited. If the award [meets a condition of §10], then and then only the award may be vacated. . . . If there was [an error under §11], then and then only it may be modified or corrected . . . ." Arbitration of Interstate Commercial Disputes, Joint Hearings before the Subcommittees of the Committees on the Judiciary on S. 1005 and H. R. 646, 68th Cong., 1st Sess., 34 (1924). The House Report similarly recognized that

## IV

In holding that §§10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards.

Although one such avenue is now claimed to be revealed in the procedural history of this case, no claim to it was presented when the case arrived on our doorstep, and no reason then appeared to us for treating this as anything but an FAA case. There was never any question about meeting the FAA §2 requirement that the leases from which the dispute arose be contracts "involving commerce." 9 U. S. C. §2; see *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265, 277 (1995) (§2 "exercise[s] Congress' commerce power to the full"). Nor is there any doubt now that the parties at least had the FAA in mind at the outset; the arbitration agreement even incorporates FAA §7, empowering arbitrators to compel attendance of

_____

an "award may . . . be entered as a judgment, subject to attack by the other party for fraud and corruption and similar undue influence, or for palpable error in form." H. R. Rep. No. 96, 68th Cong., 1st Sess., 2 (1924).

In a contemporaneous campaign for the promulgation of a uniform state arbitration law, Cohen contrasted the New York Act with the Illinois Arbitration and Awards Act of 1917, which required an arbitrator, at the request of either party, to submit any question of law arising during arbitration to judicial determination. See Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings 97–98 (1924); 1917 Ill. Laws p. 203.

witnesses. App. to Pet. for Cert. 13a.

While it is true that the agreement does not expressly invoke FAA §9, §10, or §11, and none of the various motions to vacate or modify the award expressly said that the parties were relying on the FAA, the District Court apparently thought it was applying the FAA when it alluded to the Act in quoting *LaPine*, 130 F. 3d, at 889, for the then-unexceptional proposition that "'[f]ederal courts can expand their review of an arbitration award beyond the FAA's grounds, when . . . the parties have so agreed.'" App. to Pet. for Cert. 46a. And the Ninth Circuit, for its part, seemed to take it as a given that the District Court's direct and prompt examination of the award depended on the FAA; it found the expanded-review provision unenforceable under *Kyocera* and remanded for confirmation of the original award "unless the district court determines that the award should be vacated on the grounds allowable under 9 U. S. C. §10, or modified or corrected under the grounds allowable under 9 U. S. C. §11." 113 Fed. Appx., at 273. In the petition for certiorari and the principal briefing before us, the parties acted on the same premise. See, *e.g.*, Pet. for Cert. 27 ("This Court should accept review to resolve this important issue of statutory construction under the FAA"); Brief for Petitioner 16 ("Because arbitration provisions providing for judicial review of arbitration awards for legal error are consistent with the goals and policies of the FAA and employ a standard of review which district courts regularly apply in a variety of contexts, those provisions are entitled to enforcement under the FAA").

One unusual feature, however, prompted some of us to question whether the case should be approached another way. The arbitration agreement was entered into in the course of district-court litigation, was submitted to the District Court as a request to deviate from the standard sequence of trial procedure, and was adopted by the Dis-

trict Court as an order. See App. 46–47; App. to Pet. for Cert. 4a–8a. Hence a question raised by this Court at oral argument: should the agreement be treated as an exercise of the District Court's authority to manage its cases under Federal Rules of Civil Procedure 16? See, *e.g.*, Tr. of Oral Arg. 11–12. Supplemental briefing at the Court's behest joined issue on the question, and it appears that Hall Street suggested something along these lines in the Court of Appeals, which did not address the suggestion.

We are, however, in no position to address the question now, beyond noting the claim of relevant case management authority independent of the FAA. The parties' supplemental arguments on the subject in this Court implicate issues of waiver and the relation of the FAA both to Rule 16 and the Alternative Dispute Resolution Act of 1998, 28 U. S. C. §651 *et seq.*, none of which has been considered previously in this litigation, or could be well addressed for the first time here. We express no opinion on these matters beyond leaving them open for Hall Street to press on remand. If the Court of Appeals finds they are open, the court may consider whether the District Court's authority to manage litigation independently warranted that court's order on the mode of resolving the indemnification issues remaining in this case.

\*  \*  \*

Although we agree with the Ninth Circuit that the FAA confines its expedited judicial review to the grounds listed in 9 U. S. C. §§10 and 11, we vacate the judgment and remand the case for proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES
_____

No. 06–989
_____

HALL STREET ASSOCIATES, L.L.C., PETITIONER *v.*
MATTEL, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 25, 2008]

JUSTICE STEVENS, with whom JUSTICE KENNEDY joins, dissenting.

May parties to an ongoing lawsuit agree to submit their dispute to arbitration subject to the caveat that the trial judge should refuse to enforce an award that rests on an erroneous conclusion of law? Prior to Congress' enactment of the Federal Arbitration Act (FAA or Act) in 1925, the answer to that question would surely have been "Yes."[1] Today, however, the Court holds that the FAA does not merely authorize the vacation or enforcement of awards on specified grounds, but also forbids enforcement of perfectly reasonable judicial review provisions in arbitration agreements fairly negotiated by the parties and approved by the district court. Because this result conflicts with the primary purpose of the FAA and ignores the historical context in which the Act was passed, I respectfully dissent.

Prior to the passage of the FAA, American courts were generally hostile to arbitration. They refused, with rare exceptions, to order specific enforcement of executory

_____

[1] See *Klein* v. *Catara*, 14 F. Cas. 732, 735 (C. C. D. Mass. 1814) ("If the parties wish to reserve the law for the decision of the court, they may stipulate to that effect in the submission; they may restrain or enlarge its operation as they please") (Story, J.).

agreements to arbitrate.[2]  Section 2 of the FAA responded to this hostility by making written arbitration agreements "valid, irrevocable, and enforceable."  9 U. S. C. §2.  This section, which is the centerpiece of the FAA, reflects Congress' main goal in passing the legislation: "to abrogate the general common-law rule against specific enforcement of arbitration agreements," *Southland Corp.* v. *Keating*, 465 U. S. 1, 18 (1984) (STEVENS, J., concurring in part and dissenting in part), and to "ensur[e] that private arbitration agreements are enforced according to their terms," *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (1989). Given this settled understanding of the core purpose of the FAA, the interests favoring enforceability of parties' arbitration agreements are stronger today than before the FAA was enacted.  As such, there is more—and certainly not less—reason to give effect to parties' fairly negotiated decisions to provide for judicial review of arbitration awards for errors of law.

Petitioner filed this rather complex action in an Oregon state court.  Based on the diverse citizenship of the parties, respondent removed the case to federal court.  More than three years later, and after some issues had been resolved, the parties sought and obtained the District Court's approval of their agreement to arbitrate the remaining issues subject to *de novo* judicial review.  They neither requested, nor suggested that the FAA authorized, any "expedited" disposition of their case.  Because the arbitrator made a rather glaring error of law, the judge refused to affirm his award until after that error was corrected.  The Ninth Circuit reversed.

———————

[2] See *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 120–122 (1924); *The Atlanten*, 252 U. S. 313, 315–316 (1920).  Although agreements to arbitrate were not specifically enforceable, courts did award nominal damages for the breach of such contracts.

This Court now agrees with the Ninth Circuit's (most recent) interpretation of the FAA as setting forth the exclusive grounds for modification or vacation of an arbitration award under the statute. As I read the Court's opinion, it identifies two possible reasons for reaching this result: (1) a supposed *quid pro quo* bargain between Congress and litigants that conditions expedited federal enforcement of arbitration awards on acceptance of a statutory limit on the scope of judicial review of such awards; and (2) an assumption that Congress intended to include the words "and no other" in the grounds specified in §§10 and 11 for the vacatur and modification of awards. Neither reason is persuasive.

While §9 of the FAA imposes a 1-year limit on the time in which any party to an arbitration may apply for confirmation of an award, the statute does not require that the application be given expedited treatment. Of course, the premise of the entire statute is an assumption that the arbitration process may be more expeditious and less costly than ordinary litigation, but that is a reason for interpreting the statute liberally to favor the parties' use of arbitration. An unnecessary refusal to enforce a perfectly reasonable category of arbitration agreements defeats the primary purpose of the statute.

That purpose also provides a sufficient response to the Court's reliance on statutory text. It is true that a wooden application of "the old rule of *ejusdem generis*," *ante,* at 9, might support an inference that the categories listed in §§10 and 11 are exclusive, but the literal text does not compel that reading—a reading that is flatly inconsistent with the overriding interest in effectuating the clearly expressed intent of the contracting parties. A listing of grounds that must always be available to contracting parties simply does not speak to the question whether they may agree to additional grounds for judicial review.

Moreover, in light of the historical context and the

broader purpose of the FAA, §§10 and 11 are best under-stood as a shield meant to protect parties from hostile courts, not a sword with which to cut down parties' "valid, irrevocable and enforceable" agreements to arbitrate their disputes subject to judicial review for errors of law.[3] §2.

Even if I thought the narrow issue presented in this case were as debatable as the conflict among the courts of appeals suggests, I would rely on a presumption of over-riding importance to resolve the debate and rule in favor of petitioner's position that the FAA permits the statutory grounds for vacatur and modification of an award to be supplemented by contract. A decision "*not to regulate*" the terms of an agreement that does not even arguably offend any public policy whatsoever, "is adequately justified by a presumption in favor of freedom." *FCC* v. *Beach Communications, Inc.,* 508 U. S. 307, 320 (1993) (STEVENS, J., concurring in judgment).

Accordingly, while I agree that the judgment of the Court of Appeals must be set aside, and that there may be additional avenues available for judicial enforcement of parties' fairly negotiated review provisions, see, *ante,* at 13–15, I respectfully dissent from the Court's interpreta-tion of the FAA, and would direct the Court of Appeals to affirm the judgment of the District Court enforcing the arbitrator's final award.

---

[3] In the years before the passage of the FAA, arbitration awards were subject to thorough and broad judicial review. See Cohen & Dayton, The New Federal Arbitration Law, 12 Va. L. Rev. 265, 270-271 (1926); Cullinan, Contracting for an Expanded Scope of Judicial Review in Arbitration Agreements, 51 Vand. L. Rev. 395, 409 (1998). In §§10 and 11 of the FAA, Congress significantly limited the grounds for judicial vacatur or modification of such awards in order to protect arbitration awards from hostile and meddlesome courts.

# SUPREME COURT OF THE UNITED STATES

No. 06–989

HALL STREET ASSOCIATES, L.L.C., PETITIONER *v.*
MATTEL, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 25, 2008]

JUSTICE BREYER, dissenting.

The question presented in this case is whether "the Federal Arbitration Act . . . *precludes* a federal court from enforcing" an arbitration agreement that gives the court the power to set aside an arbitration award that embodies an arbitrator's mistake about the law. Pet. for Cert. i. Like the majority and JUSTICE STEVENS, and primarily for the reasons they set forth, I believe that the Act does not *preclude* enforcement of such an agreement. See *ante*, at 13 (opinion of the Court) (The Act "is not the only way into court for parties wanting review of arbitration awards"); *ante*, at 3–4 (STEVENS, J., dissenting) (The Act is a "shield meant to protect parties from hostile courts, not a sword with which to cut down parties' 'valid, irrevocable and enforceable' agreements to arbitrate their disputes subject to judicial review for errors of law").

At the same time, I see no need to send the case back for further judicial decisionmaking. The agreement here was entered into with the consent of the parties and the approval of the District Court. Aside from the Federal Arbitration Act itself, 9 U. S. C. §1 *et seq.*, respondent below pointed to no statute, rule, or other relevant public policy that the agreement might violate. The Court has now rejected its argument that the agreement violates the Act, and I would simply remand the case with instructions that

the Court of Appeals affirm the District Court's judgment
enforcing the arbitrator's final award.