**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0269n.06

**No. 13-3965**

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PHYSICIANS INSURANCE CAPITAL; WILLIAM F. CUPP, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PRAESIDIUM ALLIANCE GROUP; GARY D. SCHNEIDMILLER; ERIC W. SCHNEIDMILLER; GEORGE N. VORYS; ROBERT J. SIMPO; JACK G. MCNALL, | ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellants. | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; RESTANI, Judge.[*]

RESTANI, Judge. Appellant Praesidium Alliance Group and several of its directors (collectively "Praesidium") appeal the district court's judgment confirming an unfavorable arbitration award that found Praesidium liable for violations of both state and federal securities and fraud laws. Because Praesidium failed to preserve a complete record of the arbitration proceedings, it cannot meet its high burden of showing that the arbitration award must be vacated on the grounds of manifest disregard of the law or evident partiality. Accordingly, in view of our limited review of arbitration awards under the Federal Arbitration Act, 9 U.S.C. § 10 (2012) ("FAA"), we affirm.

---

[*] The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

I.

Appellee Physicians Insurance Capital ("PIC") and William F. Cupp (collectively "the investors"), after receiving a private placement memorandum ("PPM"), invested $2 million in Praesidium, a company organized to create an innovative medical-malpractice insurance program. Unfortunately for the investors, the program never got off the ground, failing to gain approval from regulators. Despite the lack of approval, Praesidium continued to operate in part by using the capital generated by the investors' contributions. Following this setback, the investors came to learn that Praesidium's PPM had fraudulently misrepresented the progress of the insurance program as well as the status of the company's capital surplus.

As a result, in accordance with the parties' investment agreement, the investors initiated arbitration proceedings, seeking the return of their investment and asserting claims arising under section 10(b) of the Securities Exchange Act of 1934, SEC Rule 10b-5, Ohio Rev. Code Ann. § 1707.41(A) (LexisNexis 2013), and common law fraud and deceit. During the arbitral proceedings, the arbitrators denied the investors' motion to escrow Praesidium's funds in an amount equal to the initial investment, but the arbitrators ordered Praesidium not to pay compensation or distributions to the individual defendants pending resolution of the dispute. Later, the arbitrators denied Praesidium's motion to dismiss and compelled Praesidium to respond to the investors' discovery requests, which up to that point had gone unanswered by Praesidium. At the hearing on the merits, following a one-day delay to allow Praesidium to comply with outstanding discovery requests, some of the individual defendants left to retrieve additional documents that had not yet been turned over to the investors.

Ultimately, the arbitrators found that the PPM issued by Praesidium contained material misrepresentations and omissions about the status of Praesidium's insurance program and capital surplus, the individual defendant "directors" did not act in good faith and with due diligence in preparing the PPM, and the individual defendant "directors" did not act in the best interest of Praesidium. Accordingly, the arbitrators awarded the investors $2 million in damages plus interest, amounting to a return of their investment.

When the investors sought to confirm the award in the district court, Praesidium challenged the award and moved to vacate it, claiming that the arbitrators manifestly disregarded applicable law and acted with evident partiality against Praesidium. The district court rejected both claims and confirmed the award. Praesidium timely appealed.

II.

Praesidium challenges the award on the basis that the arbitrators acted with manifest disregard for the relevant law in at least three ways. First, Praesidium argues the arbitrators refused to apply the mandatory stay provision of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b)(3)(B). Second, Praesidium contends that the arbitrators' order prohibiting the payment of compensation or distributions to the individual defendants constituted an illegal attachment of assets and/or garnishment of wages, in violation of Ohio Rev. Code Ann. § 2715.01. Finally, Praesidium submits that the arbitrators consciously ignored an essential element of both state and federal claims, reliance, because the arbitrators did not hear any evidence of reliance from one of the investors, Cupp. Because each of these claims is unsupported by the limited record available to us on review, we reject each in turn.

In addition to the grounds for vacating an award expressly provided by the FAA, we will also vacate in the rare situation in which the arbitrators "dispense [their] own brand of industrial

justice," by engaging in manifest disregard of the law. <u>See</u> <u>United Steelworkers of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. 593, 597 (1960). The limited review applied in such a situation, however, is meant to avoid "full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" <u>Hall St. Assocs. v. Mattel, Inc.</u>, 552 U.S. 576, 588 (2008) (alteration in original) (quoting <u>Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.</u>, 341 F.3d 987, 998 (9th Cir. 2003) (en banc)); <u>see also</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros</u>, 70 F.3d 418, 421 (6th Cir. 1995) (emphasizing that manifest disregard of the law is a "very narrow standard of review."). "A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." <u>Merrill Lynch</u>, 70 F.3d at 421 (citation omitted). As long as "a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." <u>Id.</u> at 421. It is only when "no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." <u>Id.</u>

At the outset, we note that applying this standard to the present case is difficult for two reasons. First, despite arbitral rules permitting Praesidium to have made a transcript of the arbitral proceedings, Praesidium waived its right to do so in this case. <u>See</u> American Arbitration Association, Commercial Arbitration Rule 26 (2009) ("AAA Rule"), <u>available at</u> https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2015620&revision=latestrel eased (last visited Mar. 26, 2014). Following its loss in the arbitration, in a futile attempt to make up for this decision, Praesidium submitted to the district court a series of affidavits, attempting to recreate a record for review based on its account of the relevant facts from its perspective. Although disclaiming an intent to do so, Praesidium essentially asks us to determine

what occurred before the arbitrators, despite disputes as to at least some material facts. Additionally, the parties did not request a reasoned award from the arbitrators, although they were permitted to make a joint request for one. See AAA Rule 42. As a result, the award under review provides only limited insight into the reasoning of the arbitrators in reaching their decision. Because "[a]rbitrators are not required to explain their decisions," in the event there is no transcript requested, "it is all but impossible [for the court] to determine whether they acted with manifest disregard for the law." Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000). Where "the arbitrators decline to explain their resolution of certain questions of law, a party seeking to have the award set aside faces a tremendous obstacle." Merrill Lynch, 70 F.3d at 421.

Beginning with the PSLRA claim, it is unclear to us how Praesidium was prejudiced, even assuming the substance of its claim otherwise had merit. Praesidium complains that it should not have been required to comply with discovery requests or defend against the escrow motion until its motion to dismiss was adjudicated. Praesidium in fact never complied with discovery requests until after its motion to dismiss was denied. Similarly, the order limiting the use of Praesidium's funds was only a temporary measure, eventually replaced by the arbitrators' award requiring Praesidium to pay damages. Addressing the substance of Praesidium's argument, it is also unclear to us whether the PSLRA's rules concerning a stay of discovery would even apply to the present arbitration conducted under the AAA Rules, and Praesidium has failed to direct us to a single case in which a court required arbitrators to follow the PSLRA's stay provision. The arbitrators mentioned the substantive aspect of the PSLRA in their award, but only in the context of describing Praesidium's motion to dismiss, and then only explaining that the investors' statement of claim "satisfied all pleading requirements." The arbitrators did not discuss the procedural aspects of the PSLRA in any of the orders or the award. Furthermore,

as there is not a complete record of the escrow motion, even if the arbitrators thought they were bound by the PSLRA's stay provision, we cannot say that they consciously disregarded the standard set out therein by issuing a more limited order in the interest of avoiding prejudice to the investors.

Turning to the alleged attachment of Praesidium's assets and garnishment of the individual defendants' wages, we find the record equally unclear. As with the PSLRA claim, there is no reason to believe that the arbitrators were bound by a state attachment statute directed at Ohio courts. See Ohio Rev. Code Ann. §§ 2715.03 (setting standard for attachment applications made to courts), 2715.05 (describing a court's attachment order). Furthermore, the arbitrators' order was not an attachment in the normal sense of the term, as the order simply precluded Praesidium from using its funds for certain purposes — distributions to and compensation of the individual defendants. Similarly, the order was not a garnishment of wages, as it did not order Praesidium to transfer to the investors money owing to the individual defendants. Instead, it simply ordered the preservation of capital for use in the event that the investors were successful in proving their claims. Therefore, even assuming that the Ohio attachment statute were applicable to the arbitral proceedings, which we do not decide, we cannot say based on this limited record that the arbitrators knowingly refused to comply with clearly established law.

The final substantive challenge to the arbitral award is a claim that the arbitrators failed to consider a required element of the causes of action asserted by the investors: reasonable reliance. In particular, Praesidium faults the arbitrators for awarding damages to both plaintiffs despite the failure of Cupp to testify at the arbitration hearing as to his reliance on the misrepresentations and omissions in the PPM. The parties agree, however, that the arbitrators

heard testimony of at least one of PIC's investors, who was also Cupp's broker. That investor, Mr. Riley, testified that he had relied on the material omissions and misrepresentations in the PPM. It is possible that the arbitrators could have inferred from this testimony that other investors similarly would have relied on these same misstatements and omissions when investing in Praesidium. Additionally, we have held previously that a rebuttable presumption of reliance arises out of a material omission. See Molecular Tech. Corp. v. Valentine, 925 F.2d 910, 918 (6th Cir. 1991); see also Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 268 (6th Cir. 1998) (en banc). Therefore, we cannot say that the arbitrators engaged in manifest disregard of the law in finding Praesidium liable for violations of various state and federal laws.

### III.

In addition to claiming that the arbitrators engaged in manifest disregard of the law, Praesidium asserts that the arbitrators also demonstrated evident partiality against them, a ground for vacating an award under the FAA. See 9 U.S.C. § 10(a)(2). Praesidium points to three bases for its assertion: the arbitrators 1) manifestly disregarded relevant law, 2) prohibited the payment of funds to the individual defendants, and 3) conducted the merits hearing without all individual defendants present. "[A]lleged partiality must be direct, definite, and capable of demonstration, and the party asserting [it] must establish specific facts that indicate improper motives on the part of the arbitrator." Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 329 (6th Cir. 1998) (internal quotation marks omitted). Because plausible, non-biased reasons support each of these decisions by the arbitrators, we affirm the district court's rejection of this basis for vacating the award.

As explained above, we find that based on this limited record, the arbitrators did not manifestly disregard the law in a way that might show bias against Praesidium. Similarly, we

find no fault with the arbitrators' decision to partially restrict the use of Praesidium's funds. Importantly, we note that Praesidium remained free to continue paying for legal representation, including for legal representation of the individual defendants who shared counsel with Praesidium. The allegation of partiality is further undercut by the fact that the arbitrators denied the more extreme request by the investors to completely escrow the funds in dispute. Additionally, arguments that the order required the arbitrators to prejudge the outcome of the arbitration are meritless, as some weighing of the merits is a component of any form of preliminary or interim relief. Cf. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (requiring party seeking a preliminary injunction to establish likelihood of success on the merits). With respect to the presence of the individual defendants at the merits hearing, the parties dispute whether the individual defendants agreed to continue the hearing in their absence. Without a record, we cannot resolve this dispute, although we note that such a waiver may have been reasonable where, as here, the individual defendants continued to be represented by counsel at the hearing after they left to retrieve discovery documents.

IV.

Because Praesidium failed to create a record of the arbitration, despite its ability to do so under the applicable arbitral rules, it is unable to support either of the grounds it advances in seeking to vacate the arbitration award. Accordingly, the district court's judgment confirming the award is affirmed.