DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MANAGED CARE INSURANCE CONSULTANTS, INC.,**
Appellant,

v.

**UNITED HEALTHCARE INSURANCE COMPANY; UNITED HEALTHCARE OF FLORIDA, INC.;** and any and all entities that are its affiliates,
Appellees.

No. 4D16-2767

[July 19, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack B. Tuter, Judge; L.T. Case No. 15-018699CACE (07).

Glenn J. Waldman and Douglas T. Marx of Waldman Trigoboff Hildebrandt Marx & Calnan, P.A., Fort Lauderdale, for appellant.

Todd R. Legon and William F. Rhoads of Legon Fodiman, P.A., Miami, and David B. Potter and Archana Nath of Fox Rothschild LLP, Minneapolis, for appellees.

WARNER, J.

Managed Care Insurance Consultants, Inc., appeals the order denying its motion to vacate an arbitration award based on the partiality of one of the arbitrators. It contends it showed that the arbitrator had an actual conflict, as her husband's medical practice had a business connection with the appellee, United Healthcare of Florida. Because the court found that the arbitrator did not have "actual knowledge of such a relationship or potential conflict prior to or during the subject arbitration," nor was there any actual bias shown, the court did not err in denying the motion. We affirm.

United Health Care ("United") contracted with Centers for Medicare & Medicaid Services ("CMS") to offer Medicare Advantage health plans to Medicare beneficiaries in South Florida. In exchange for United providing Medicare benefits, CMS made monthly payments to United for each of its

Medicare Advantage members. United entered into a delegation agreement with Managed Care Insurance Consultants, Inc. ("MCIC"), whereby United delegated to MCIC some of its medical management responsibilities under the contract with CMS. In return, United was to pay the authorized claims and to fund the payments with monies it received from CMS. MCIC was to be compensated from revenue placed into a risk pool, based upon a ratio of expenses to revenue. Both parties claimed that the other breached the agreement.

The contract had an arbitration provision through the American Arbitration Association ("AAA"). The AAA appointed three arbiters to hear the dispute, including the chairperson.

We need not detail the claims and the arbitral proceedings. In short, MCIC contended that United had not funded the risk pool properly, nor had it paid only authorized expenses from the pool. MCIC claimed lost revenues between $14 million and $21 million. United, on the other hand, claimed that there were deficits in the risk pool due to MCIC's management of patient care. It sought damages in the millions of dollars.

In the Final Arbitration Award, the panel found that United had breached the agreement for funding the risk pool, but did not award any damages to MCIC because it found the evidence in support of the claimed damages was too speculative. Similarly, the panel found for MCIC on its claim that certain patient expenses should have been removed from the risk pool reconciliation. Again, however, it did not award damages because of "its inability to quantify with reasonable certainty the amount of invalid claims that were paid by United." As to United's claim against MCIC, the panel denied relief because United could not establish that it had performed its part of the contract. Thus, neither party obtained a damage award from the other party. MCIC made a motion to affirm the portion of the arbitration award which found that United had breached the agreement and to vacate the portion which refused to award MCIC damages. The panel denied the motion and the order became final.

Subsequently, MCIC filed a petition in circuit court to confirm the award as to its findings of liability in its favor but to vacate the denial of damages. It claimed that the lack of damage award was contrary to Florida law, and the evidence was clear that it was entitled to at least $24 million in damages.

After filing its petition, MCIC filed an amended petition to vacate the award in its entirety because of the chairperson's failure to disclose the relationship between her physician husband and United. The

chairperson's husband was a cardiologist associated with HeartWell, a large cardiology group in South Florida. He treated patients at HeartWell who were insured by United. He was also on the Board of Directors of HeartWell. The motion alleged that the chairperson was the primary architect of the arbitration award based on the amounts she charged to the parties after the close of the final hearing. The motion also alleged she never disclosed that her husband had a contractual relationship with United or that some of the medical claims at issue were actually paid to her spouse. Because HeartWell was part of United's network—and United reimbursed HeartWell for its doctors' treatment of patients insured by United—the chairperson's failure to disclose that she was married to a physician receiving payments from United established partiality on her part.

The court allowed limited discovery from the chairperson. In the chairperson's deposition via written questions, she testified that she had asked her husband if he had any relationship with United and he told her he didn't. She had him look at the witness lists, as well as the parties, and he said he had no dealings with any of them. She stated that if she had known he had a relationship she would have disclosed it, but "[m]ost of the times he probably doesn't even know who the insurance companies are for his patients, and he did not tell me that he had any relationship with United Healthcare." She was not aware of any money that her husband, or his practice, received from United; nor was she aware that HeartWell had a contract with United. She was asked whether, between 2010 and 2015, HeartWell billed United $12.9 million[1] for medical services, something she should have disclosed. She testified that she had no idea that there was a relationship. After reviewing the AAA oath, which required her to do a reasonable investigation of potential conflicts, she testified that she had made that investigation by questioning her husband and presenting him with the conflicts checklist of the parties and witnesses.

In lieu of testimony at the hearing on the motion to vacate, MCIC submitted the affidavit of another arbitrator. That arbitrator testified that the relationship between the physician husband and United should have been disclosed and that the chairperson arbitrator was obligated to do an investigation to ascertain the business relationship. The affidavit did not opine on what a reasonable investigation would include.

---

[1] When this question was re-asked, the figure used was $41.3 million according to the transcript. There is no explanation for the discrepancy in the numbers.

The trial court denied both motions to vacate the award. As to the issue of conflict on the part of the chairperson, the court relied on *Gianelli Money Purchase Plan & Trust v. ADM Investor Services, Inc.,* 146 F.3d 1309, 1313 (11th Cir. 1998), to conclude that MCIC had not proved an actual conflict nor that actual bias had been shown. The court ruled that "although there was evidence that [the arbitrator's husband] treats patients who are insured by United and, as a result, receives reimbursement from United, there was insufficient evidence demonstrating [that the arbitrator] had actual knowledge of such a relationship or potential conflict prior to or during the subject arbitration." As to the original claim that the arbitration panel had exceeded its powers by not applying the correct law, the court found that this was not a statutory ground for vacating the award and denied the petition. From this order, MCIC appeals.

In order to vacate an arbitration award, one of the statutory grounds listed in section 682.13(1), Florida Statutes (2015), must be present. One of those grounds warranting vacatur is a showing that there was "[e]vident partiality by an arbitrator appointed as a neutral arbitrator[.]" § 682.13(1)(b)1., Fla. Stat. An arbitrator has an affirmative duty to disclose to the parties any business relationships that the arbitrator might have which might create the impression of possible bias. *See Weinger v. State Farm Fire & Cas. Co.,* 620 So. 2d 1298, 1299 (Fla. 4th DCA 1993).

The Federal Arbitration Act, which applies in this case, likewise permits vacatur of an arbitration award where a litigant shows "evident partiality or corruption in the arbitrators[.]" 9 U.S.C. § 10(a)(2) (2015). In *Gianelli,* the Eleventh Circuit followed its prior precedent and held that "an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Gianelli,* 146 F.3d at 1312.

In *Gianelli,* the office manager of the Gray Harris law firm was chosen as an arbitrator for a dispute between Gianelli and an investor service. *Id.* at 1310. Before the arbitration commenced, Gianelli discovered that Gray Harris represented the principal of the adverse party, Kelly, in a lawsuit. *Id.* The office manager professed no knowledge of the case, and the principal indicated that it was an isolated incident. *Id.* After the officer manager arbitrator rendered a ruling in favor of ADM, Gianelli discovered that the relationship between Kelly and Gray Harris was considerably more extensive. *Id.* Prior to the office manager's employment with the Gray Harris firm, the firm had extensive representation of Kelly, but the arbitrator did not know of the representation. *Id.* While the district court

4

granted the motion to vacate for evident partiality, the circuit court reversed. *Id.* It concluded that there was no showing of actual bias, and thus the first criteria of actual conflict did not exist. *Id.* at 1313. As to the second criteria, it found that nothing in the record showed that the arbitrator knew of the prior representation of Kelly. *Id.* "Because [the arbitrator] did not have actual knowledge of the information upon which the alleged 'conflict' was founded, the second 'evident partiality' condition is not present in this case." *Id.*

*Gianelli* has been criticized in several courts for requiring actual knowledge of a conflict without requiring that the arbitrator conduct an investigation to ascertain whether a conflict exists. *See, e.g., New Regency Prod., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1109 (9th Cir. 2007). Those courts impose a duty to investigate potential conflicts. *Id.*; *see also Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994); *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132 (2d Cir. 2007); *ANR Coal Co., v. Cogentrix of N.C., Inc.*, 173 F.3d 493 (4th Cir. 1999).

The cases requiring investigation deal with instances in which lawyers have not made a conflicts check within their own firm or a business person has not make a check of business relationships of the arbitrator's own business with the arbitration parties. In this case, however, the business relationship is between the arbitrator's husband's business and one of the parties to the arbitration. The arbitrator *did* investigate by asking her husband about any conflicts and presenting him with a conflicts checklist. Thus, even if a duty to investigate is required, the arbitrator complied. We do not believe that the arbitrator is compelled to disbelieve the information she is given by her husband and investigate further. We are not even sure that the arbitrator would have the ability to probe the corporate business to determine whether a conflict exists.

Under Florida law, section 682.041, Fla. Stat. (2015), requires that an arbitrator disclose any "*known* facts that a reasonable person would consider likely to affect the person's impartiality as an arbitrator in the arbitration proceeding[.]" § 682.041(1), Fla. Stat. (emphasis added). If there was no evidence that the arbitrator knew of the facts, then there would be no basis for vacatur. Thus, the Florida Arbitration Code adheres most closely to *Gianelli.*

There was no actual bias shown by the arbitrator in this case, nor was there an actual conflict. The arbitrator did not know of the business relationship between her husband's corporate employer and United (nor,

apparently, did her husband).  The trial court did not err in denying the motion to vacate.

In its other claim for vacatur of the arbitration award, MCIC claims that the arbitrators exceeded their powers under the agreement by failing to apply controlling Florida law in denying any damage award.  As found by the trial court, this is an attempt to disguise what is clearly a claim of legal error by the arbitration panel, which is not a ground to vacate an arbitration award.  *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 585-86 (2008) (holding that arbitrator's legal error is not reviewable under the Federal Arbitration Act, and private contract cannot expand grounds for vacating award under act); *see also Visiting Nurse Ass'n of Florida, Inc. v. Jupiter Med. Ctr, Inc.*, 154 So. 3d 1115, 1138 (Fla. 2014).

For the foregoing reasons, we affirm the order denying the motion to vacate the arbitration award.

DAMOORGIAN and FORST, JJ., concur.

*         *         *

***Not final until disposition of timely filed motion for rehearing.***

6