In re **FRUEHAUF TRAILER CORPORATION, et al.,** Debtors.

**Fruehauf Trailer Corporation, Plaintiff,**

v.

**National Union Fire Insurance Company of Pittsburgh, PA and American International Group, Inc., Defendants.**

**Bankruptcy Nos. 96–1563 (PJW), 96–1564(PJW), 96–1565(PJW), 96–1566(PJW), 96–1567(PJW), 96–1568(PJW), 96–1569(PJW), 96–1570(PJW), 96–1571(PJW), 96–1572(PJW).**

**Adversary No. 98–514 (PJW).**

United States Bankruptcy Court, D. Delaware.

Oct. 5, 2009.

Michael S. Davis, Zeichner Ellman & Krause LLP, New York, NY, for Defendants, National Union Fire Insurance

Company of Pittsburgh, PA and American International Group, Inc.

William P. Bowden, Amanda M. Winfree, Ashby & Geddes, P.A., Wilmington, DE, Delaware Attorneys for Defendants, National Union Fire Insurance Company of Pittsburgh, PA and American International Group, Inc.

David L. Finger, Finger, Slanina & Liebesman, LLC, Wilmington, DE, Robert T. Kugler, Leonard, Street and Deinard, P.A., Minneapolis, MN, for Plaintiff, The End of the Road Trust Successor in Interest to the Fruehauf Trailer Corporation.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion of Fruehauf Trailer Corporation ("Fruehauf") [1] to vacate or modify an arbitration award. (Adv.Doc.# 54.) In response, National Union Fire Insurance Company of Pittsburgh, Pennsylvania and American International Group, Inc. (collectively, "Defendants") move for an order confirming that arbitration award. (Adv. Doc.# 60.) For the reasons stated below, I will confirm the arbitration award.

## BACKGROUND

The nature of this adversary proceeding was described in detail by this Court in its March 2, 2007 opinion ordering the arbitration that gave rise to the instant motions. *Fruehauf Trailer Corp. v. Nat'l Union Fire Ins. Co. (In re Fruehauf Trailer Corp.)*, 2007 WL 676248, 2007 Bankr.LEXIS 609 (Bankr.D.Del. Mar. 2, 2007). In brief, prior to filing for bankruptcy, Fruehauf was in the business of designing, manufacturing, selling, and servicing truck trailers, parts, and accessories. *Id.* 2007 WL 676248, at *1, 2007

Bankr.LEXIS 609, at *1–*2. On October 7, 1996, Fruehauf, along with several other affiliated entities, filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (Case No. 96–1563.) Defendants are affiliated insurance companies that provided workers' compensation insurance services to Fruehauf through two insurance programs prior to Fruehauf filing for bankruptcy. *In re Fruehauf Trailer*, 2007 WL 676248, at *1, 2007 Bankr.LEXIS 609, at *2.

On October 6, 1998, Fruehauf filed the complaint leading to the arbitration award. The complaint sought to avoid certain allegedly preferential transfers, to disallow claims of Defendants arising from one of the insurance services, and the turnover of alleged excess cash collateral paid to Defendants pursuant to the other insurance service. (Adv.Doc.# 1.) Following briefing and argument—which began shortly after Fruehauf filed the complaint, and, following years of inactivity, during which Fruehauf's liquidating plan was confirmed and during which I issued two contemplated notices of dismissal for failure to prosecute, resumed again in 2005—I referred the matter to arbitration pursuant to the controlling Indemnity Agreement. *In re Fruehauf Trailer*, 2007 WL 676248, at *2–3, 2007 Bankr.Lexis 609, at *5–*6.

Of relevance to the subsequent arbitration, under the first program, which the parties have named the Retro Insurance Program, Defendants covered workers' compensation claims against Fruehauf that arose from July 13, 1990 through July 31, 1991. The Retro Insurance Program required Fruehauf to pay premiums based on actual losses together with other charges. The parties agreed that as of June 30, 2008—the valuation date for the arbitration proceedings—Fruehauf owed

1. The End of the Road Trust, a liquidating trust, is successor in interest to Fruehauf.

Defendants $701,452 arising under the Retro Insurance Program comprised of: $543,902 that was due as of the date of Fruehauf's bankruptcy petition, and $157,500 that accrued post-petition. (Adv. Doc.# 62, p. 4.)

Under the second program, which the parties have named the Cash Collateral Insurance Program ("CCIP"), Defendants covered workers' compensation claims against Fruehauf that arose from August 1, 1991 through August 1, 1996. Pursuant to the CCIP, Fruehauf provided Defendants with cash collateral in advance; this cash collateral accrued interest. The parties stipulated at the outset of the arbitration hearing, prior to the allowance for setoffs, but including all interest claimed by Fruehauf since the petition date, that the cash collateral balance would calculate to $2,079,330. While the parties stipulated to the calculation of interest, they did not stipulate as to the entitlement to interest. (*Id.* at pp. 4–5.)

Following resolution by Fruehauf and Defendants of the preferential transfer claim, the arbitration panel was presented with two questions: (1) whether the parties' respective obligations under the insurance programs were subject to setoff; and (2) if setoff was appropriate, what was the proper methodology for setoff. On September 16, 2008, the arbitration panel issued an Interim Order finding that the respective obligations were subject to setoff. (Adv.Doc.# 55, ex. D.) On March 9, 2009, the arbitration panel issued its Final Arbitration Award, which approved the offset of the claims based on the Retro Insurance Program against the claims based on the CCIP, and which required Defendants to pay Fruehauf $303,626 (the "Payment"). (*Id.* at ex. E.) It is the Payment that prompted the instant motions.

In calculating the Payment, the arbitration panel used the following methodology: (1) the balance that Fruehauf owed Defendants as of the date of Fruehauf's bankruptcy petition was offset as of the date of the petition—October 6, 1998; and (2) the remaining balance that Fruehauf owed Defendants post-petition was offset proportionally each year as an annual adjustment. In the alternate, the arbitration panel could have offset the total amount Fruehauf owed Defendants against the total amount Defendants owed Fruehauf. Because the arbitration panel calculated the setoff according to the former methodology, essentially retroactively offsetting certain claims and thereby decreasing the amount of Fruehauf's claim that accrued interest, the arbitration panel decreased Fruehauf's award by $256,807 from what it would have been had the arbitration panel used the latter methodology. In effect, and as viewed by the parties, the arbitration panel denied Fruehauf interest on some of the money it claimed Defendants owed Fruehauf under the insurance programs. (Adv. Doc. # 55, pp. 5–8; Adv. Doc. # 62, p. 6.)

On June 4, 2009, seeking the $256,807 in interest it viewed as wrongly denied, Fruehauf filed the instant motion. (Adv.Doc. # 54.) Fruehauf argues that the arbitration panel's setoff methodology constitutes "manifest disregard for the law," and that, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, this Court should vacate the award, or, alternatively, modify the award to increase it by $256,807. (Adv.Doc.# 55.) In response, Defendants request that the Court confirm the arbitration award, arguing that the arbitration panel did not act in "manifest disregard of the law," and even if it did, the Supreme Court of the United States' recent decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), invali-

dated "manifest disregard of the law" as a ground upon which to vacate or modify an arbitration award. (Adv.Doc.# 62.) The arbitration panel's short written decision does not explain its reasoning as to why it adopted the methodology for setoff it used.

## DISCUSSION

### Standard of Review

Section 10 of the FAA lists the grounds for vacation of an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers . . . .

9 U.S.C. § 10(a). Similarly, § 11 of the FAA lists the grounds for modification of an arbitration award: "(a) Where there was an evident material miscalculation of figures . . . . (b) Where the arbitrators have awarded upon a matter not submitted to them, . . . . (c) Where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Additionally, tracing back to the Supreme Court of the United States' decision in *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), in which it stated that "the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation," courts

uniformly have held that "an award found to be in manifest disregard of the law can also be vacated by a court." *Sherrock Bros. v. DaimlerChrysler Motors Co., LLC,* 260 Fed.Appx. 497, 499 (3d Cir.2008). As a court may not vacate or modify an arbitration award for any other reason, a court's review of an arbitration award is characterized as "severely limited." *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reins. Co., Ltd.,* 868 F.2d 52, 56 (3d Cir.1989) (quoting *Swift Indus., Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1130 (3d Cir.1972)).

In reviewing an award for "manifest disregard of the law," vacating or modifying that award is appropriate "only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [vacatur or modification] provisions of the [FAA] apply." *Black Box Corp. v. Markham,* 127 Fed.Appx. 22, 25 (3d Cir.2005) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir.2003)); *see also Dluhos v. Strasberg,* 321 F.3d 365, 370 (3d Cir.2003) (noting that the review of an arbitration award is "extremely deferential"). The Third Circuit has held that "the terms of [an] arbitral award will not be subject to judicial revision unless they are completely irrational." *Mutual Fire,* 868 F.2d at 56 (quoting *Swift Indus.,* 466 F.2d at 1131) (internal quotations omitted). Further, an arbitration panel is not required to explain its reasoning as to its award, and as long as there exists "a barely colorable justification for the outcome reached," the award should be enforced even if the reviewing court disagrees with it on the merits. *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union,* 954 F.2d 794, 797 (2d Cir. 1992); *see also United Steelworkers Of America v. Enterprise Wheel & Car Corp.,*

363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award.").

■ To meet this extremely high and deferential standard, the movant seeking vacatur or modification "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Black Box*, 127 Fed.Appx. at 25 (quoting *Duferco Int'l Steel Trading*, 333 F.3d at 389); *see also Koken v. Cologne Reins. (Barb.) Ltd.*, 2006 WL 2460902, 2006 U.S. Dist LEXIS 59540 (M.D.Pa. Aug. 23, 2006) ("A court can vacate an arbitration award under the manifest disregard standard if it finds that … (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.").

*Status of "Manifest Disregard Of The Law"*

In 2008, in the context of an arbitration agreement that provided that a district court could vacate or modify an arbitration award "where the arbitrator's findings of facts are not supported by substantial evidence, or … where the arbitrator's conclusions of law are erroneous," the Supreme Court of the United States held that "§§ 10 and 11 [of the FAA] respectively provide the FAA's exclusive grounds for expedited vacatur and modification" and cannot be supplemented by parties. *Hall Street*, 128 S.Ct. at 1400–03. In so holding, in dicta, the Supreme Court questioned whether "manifest disregard of the law," as evoked by judges, constituted a judicial creation of an additional ground for vacatur or "merely referred to the § 10 grounds collectively, rather than adding to

them." *Id.* at 1404. However, the Supreme Court did not clearly state whether "manifest disregard for the law" remains a valid ground on which to vacate or modify an arbitration award.

Following this decision, circuit courts considering the status of "manifest disregard of the law" have split as to whether it remains a viable ground for vacatur or modification: the First and Fifth Circuits have rejected the doctrine in light of *Hall Street*, while the Second, Sixth, and Ninth Circuits consider the doctrine to have survived Hall Street. *Citigroup Global Mkts. Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir.2009) ("*Hall Street* unequivocally held that the statutory grounds are the exclusive means for vacatur under the FAA. Our case law defines manifest disregard of the law as a *nonstatutory* ground for vacatur."); *Comedy Club, Inc. v. Improv. West Assocs.*, 553 F.3d 1277, 1290 (9th Cir.2009) ("[W]e conclude that, after *Hall Street Associates*, manifest disregard of the law remains a valid ground for vacatur because it is a part of § 10(a)(4)."); *Ramos–Santiago v. United Parcel Serv.*, 524 F.3d 120, 124 n. 3 (1st Cir.2008) (noting, in dicta, "that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act"); *Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir.2008) ("[*Hall Street*] did not, we think, abrogate the 'manifest disregard' doctrine altogether."); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed.Appx. 415, 419 (6th Cir. 2008) ("In light of the Supreme Court's hesitation to reject the 'manifest disregard' doctrine in all circumstances, we believe it would be imprudent to cease employing such a universally recognized principle. Accordingly, this Court will follow its well-established precedent here

and continue to employ the 'manifest disregard' standard.").

The Third Circuit has yet to consider the status of "manifest disregard." However, the District Court for the Western District of Pennsylvania, citing *Hall Street*, stated in a footnote, without analysis or further explanation, that the "Supreme Court recently explained that the statutory grounds are exclusive, rejecting the widely held judicial view that another ground was implicit in the FAA, namely, where the arbitration award was made in 'manifest disregard of the law.'" *Martik Bros., Inc. v. Kiebler Slippery Rock, LLC*, 2009 WL 1065893, at *2 n.2, 2009 U.S. Dist. LEXIS 33208, at *5–6 n. 2 (W.D.Pa. Apr. 20, 2009).[2] As discussed below, I do not need to take up the question of whether "manifest disregard of the law" survived *Hall Street:* the issue is immaterial to the instant motion as Fruehauf has failed to prove that the arbitration award should be vacated or modified under §§ 10 or 11 of the FAA or based on "manifest disregard of the law."

*The Instant Arbitration Award*

 In adopting a setoff methodology that effectively retroactively offset certain

of the claims under the insurance programs, the arbitration panel did not manifestly disregard the law or proceed in a way that would permit vacation or modification of the arbitration award pursuant to §§ 10 or 11 of the FAA. Setoff is an equitable remedy. *See, e.g., CDI Trust v. U.S. Elec. Inc. (In re Commun. Dynamics, Inc.)*, 382 B.R. 219, 226 (Bankr.D.Del.2008) ("Setoff and recoupment are not dependent on the parties' contract; rather, they are equitable remedies available independent of any contractual remedy."). As such, it is within a court's purview to deny setoff "if there is some basis in equity to do so." *Id.* at 227. Similarly, based on the equitable nature of setoff, in permitting setoff, a court may calculate the setoff in the way it deems most equitable. Although offsetting the total amount one party owes another party against the total amount that the other party owes the first party may be the predominate method to calculate a setoff, it is not the exclusive method.

In addition, the Indemnity Agreement which I relied on to refer the matter to arbitration and which controlled the arbi-

---

**2.** Defendants also cite to *Danieli Corus, Inc. v. ATSI, Inc.*, 2009 U.S. Dist. LEXIS 45458 (W.D.Pa. May 29, 2009), for the proposition that another district court within the Third Circuit has considered and rejected "manifest disregard of the law" in light of Hall Street. However, the court in that decision did not address whether "manifest disregard" survived *Hall Street.* Rather, the court held that, in light of *Hall Street,* a party's proposed nonstatutory bases of "completely irrational" and "entirely unsupportable by the record" for vacating an arbitration award definitely were not permissible grounds on which to consider vacating the award: "the Court declines to consider these grounds because to do so would contravene the clear holding of the Supreme Court in *Hall Street." Id.* at *12. Though it mentioned other circuits' opinions as to "manifest disregard" after *Hall Street,* the court did not hold whether "manifest dis-

regard of the law" survived in the Third Circuit. Similarly, other district courts within the Third Circuit have mentioned, but declined to render an opinion concerning the continued vitality of "manifest disregard of the law." *See Jones v. PPG Indus., Inc.*, 2009 WL 1119595, at *2 n. 1, 2009 U.S. Dist. LEXIS 35389, at *4–*5 n. 1 (W.D.Pa. Apr. 27, 2009); *New Jersey Carpenters Funds v. Prof'l Furniture Servs.*, 2009 WL 483849, at *4 n. 1, 2009 U.S. Dist. LEXIS 14636, at *14–*16 n. 1 (D.N.J. Feb. 25, 2009); *Cacace Assocs., Inc. v. S. N.J. Bldg. Laborers Dist. Council*, 2009 WL 424393, at *5 n. 4, 2009 U.S. Dist. LEXIS 12675, at *15–*17 n. 4 (D.N.J. Feb. 19, 2009); *AAMCO Transmissions, Inc. v. Sally*, 2008 WL 5272449, at *3 n 1, 2008 U.S. Dist. LEXIS 102502, at *7–*9 n. 1 (E.D.Pa. Dec. 17, 2008); *O'Leary v. Salomon Smith Barney, Inc.*, 2008 WL 5136950, at *2, 2008 U.S. Dist. LEXIS 98483, at *6–*9 (D.N.J. Dec. 5, 2008).

tration specifically relieved the arbitration panel of any obligation to adopt a strict application of legal principles in making its determinations. The Indemnity Agreement provides:

> The Arbitrators and Umpire are *relieved from all judicial formality and may abstain from following the strict rules of law. They shall settle any dispute under this Agreement according to equitable rather than a strictly legal interpretation of its terms* and their decision shall be final and not subject to appeal.

(Adv. Doc. # 55, ex. A, article IX (emphasis added).) Courts have held that similarly broad language in arbitration agreements has the ability to "confer a wide spectrum of powers on arbitration panels." *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 261–63 (2d Cir.2003) ("It is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral ... award that ensures a meaningful final award."); *see also Sperry Int'l Trade, Inc. v. Gov't Of Israel*, 689 F.2d 301, 306 (2d Cir.1982) ("[A]rbitrators have power to fashion relief that a court might not properly grant."). For example, in *St. Paul Fire and Marine Ins. Co. v. Eliahu Ins. Co., Ltd.*, 1997 WL 357989, at *7, 1997 U.S. Dist. LEXIS 8916, at *24–26 (S.D.N.Y. June 26, 1997), the court interpreted language providing that the "[arbitrators] are relieved of all judicial formalities and may abstain from following the strict rules of law," which effectively is identical to the language in the instant Indemnity Agreement. The court held that the arbitration panel "would be free to disregard [the applicable state's] substantive law." *Id.* 1997 WL 357989, at *7, 1997 U.S.Dist. LEXIS 8916, at *24. Accordingly, not only was the arbitration panel in the instant case presented with case law that allowed courts to rule based on equi-

table principles, but the applicable Indemnity Agreement allowed the panel to deviate from strict rules of law.

In the instant case, had I not referred the matter to arbitration, instead deciding whether the parties' respective obligations were subject to setoff and how that setoff should be calculated, I easily could have held that the calculation methodology adopted by the arbitration panel was the most equitable: a court may calculate a setoff in the way it views as most equitable. The fact that the arbitration panel was not required to apply strict rules of law, but rather was allowed to deviate from legal principles as it deemed appropriate, only bolsters the propriety of the arbitration panel's decision regarding the setoff calculation.

Moreover, based on the briefs submitted to the arbitration panel and the transcript of the hearings, Fruehauf and Defendants presented arguments as to their respective positions concerning the setoff calculation methodology. (*See* Adv. Doc. # 55, exs. F and G.) However, I cannot determine from the arbitration panel's two orders what the panel relied upon or concluded as to the parties' arguments. (*See id.* at exs. D and E.) The arbitration panel was not required to disclose its reasoning. The fact that there exist equitable principles that could lead the panel to adopt the calculation methodology it used is sufficient for me to conclude that the panel did not manifestly disregard the law. The arbitration panel did not commit an "egregious impropriety" in calculating the setoff, nor was the calculation "completely irrational." Indeed, there is ample justification for the decision it reached. In short, there simply is no basis to say that the arbitration panel was manifestly in error, and, thus, I find that the panel did not act in "manifest disregard of the law."

Further, none of the grounds contained in §§ 10 or 11 of the FAA apply to the arbitration award. There is no evidence that the award was procured by fraud or other undue means, that the arbitration panel was partial to one party or otherwise corrupted, that there was any misconduct by the panel, or that the panel exceeded its powers. *See* 9 U.S.C. § 10(a). Similarly, there is no evidence that there was material miscalculation of the applicable figures, that the arbitration panel took up a matter not submitted to it, or that the award was otherwise "imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Pursuant to the FAA, I must confirm the arbitration award.

## CONCLUSION

For the reasons stated above, Defendants' motion for an order confirming the arbitration award (Adv.Doc.# 60) is granted and Fruehauf's motion for vacation or modification of the arbitration award (Adv. Doc.# 54) is denied.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Defendants' motion for an order confirming the arbitration award (Adv.Doc.# 60) is **granted** and Fruehauf's motion for vacation or modification of the arbitration award (Adv. Doc.# 54) is **denied.**