# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2009

Charles R. Fulbruge III
Clerk

No. 07-40984

AGERE SYSTEMS INC, a Delaware Corporation

Plaintiff - Appellee

v.

SAMSUNG ELECTRONICS COMPANY LTD, a Corporation of the Republic of Korea

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:06-CV-185

Before JONES, Chief Judge, and OWEN and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Agere Systems, Inc. sued Samsung Electronics Company LTD, alleging a breach of a patent licensing agreement. Samsung moved to compel arbitration and stay the proceedings based on an arbitration clause contained in a subsequent payment scheduling agreement. The district court denied the request, and Samsung appealed. Because we conclude that an arbitrator should determine the arbitrability of this action, we REVERSE and REMAND.

## I. Background

At the center of this controversy are five agreements, each involving royalty payments. In 1990, Samsung entered into a detailed patent cross-license

agreement with AT&T, in which both entities held nonexclusive rights to each others' patents. Samsung and AT&T also entered into a contemporaneous letter agreement that provided the payment structure for royalties until December 31, 1994.[1] The letter agreement explained that, after December 31, 1994, Samsung and AT&T would negotiate in "good faith" for a new payment structure arrangement.

As contemplated, Samsung and AT&T executed a new agreement on December 11, 1995. This agreement set forth the payment structure through December 31, 1999. Similar to the 1990 letter agreement, the 1999 agreement obligated Samsung and AT&T to negotiate a new payment schedule in "good faith" upon expiration of the stated period. It also stated that the negotiations were to "be based on the same methodology" as before.

Lucent Technologies GRL Corporation became AT&T's successor-in-interest. On July 28, 2000, as contemplated in the 1995 agreement, Samsung and Lucent entered into a new payment structure agreement. This agreement provided the payment structure for royalties until December 31, 2004. It also contained four other pertinent provisions: (1) that in the event of a dispute arising out of the agreement, either party could request mediation; (2) that if mediation was unsuccessful, the dispute would be submitted to arbitration; (3) that an arbitrator was to determine questions of arbitrability; and (4) like the 1995 agreement, that Samsung and Lucent would use "the same methodology" as in the previous negotiations to reach a post-December 31, 2004 agreement.

In late 2004, Agere became Lucent's successor-in-interest and began negotiating with Samsung for a new payment schedule. However, ten months after the stated December 31, 2004 date, the parties still had not reached a new

---

[1] The 1990 base agreement itself contained a payment structure, but the contemporaneous letter agreement altered that structure.

agreement. Samsung sent Agere a letter stating that no future royalties were due. Agere responded by threatening litigation.

Eventually, on January 9, 2006, the parties resolved some of their differences.[2] By its terms, the 2006 agreement set forth a payment schedule for the period of January 1, 2005, through June 30, 2005. Both parties would use their "best efforts" to reach a new payment schedule agreement before April 30, 2006; neither party would "assert an IP action of any kind any where against the other relating to the PLA before April 30, 2006." The 2006 agreement did not reference an alternative dispute procedure or any of the prior agreements, except for the initial 1990 patent cross-licensing agreement.

The parties failed to reach an agreement by April 30, 2006. Agere filed suit in May 2006. Samsung responded by invoking the mediation clause contained in the 2000 agreement. Agere complied with Samsung's request for mediation, but the process was unsuccessful. Samsung then answered Agere's complaint and later filed a motion to compel arbitration. The district court denied the motion, holding that the 2006 agreement superceded the 2000 agreement. Samsung now appeals.

## II. Discussion

This court has jurisdiction under the Federal Arbitration Act, which provides that "[a]n appeal may be taken from . . . an order . . . denying a petition . . . to order arbitration to proceed . . . ." 9 U.S.C. § 16(a)(1)(B). We review the district court's decision *de novo*. Pursuant to choice of law provisions contained in the various agreements, the parties agree that New York law governs their dispute. *Morrison v. Amway Corp.*, 517 F.3d 248, 253 (5th Cir. 2008).

The district court denied Samsung's motion to compel arbitration by finding that the agreement to arbitrate had expired:

---

[2] Samsung characterizes the 2006 agreement as a "standstill agreement," implying that the 2000 agreement still governed future negotiations. Agere disputes this characterization.

> To determine whether to compel arbitration, the court answers two questions: (1) whether the arbitration agreement is valid and (2) whether the dispute falls within the scope of the agreement. In this case, there is no longer a valid agreement to arbitrate. The court agrees with Agere that the terms of the 2006 Letter Agreement supersede the terms of the 2000 PLA.

Samsung argues that the district court's analysis went too far. We agree.

The Supreme Court has identified the appropriate starting point for resolving this type of dispute. While the "general rule" is that "question[s] of whether the parties agreed to arbitrate [are] to be decided by the court, not the arbitrator," an exception applies in cases where the parties unmistakably provide for the arbitrator to decide. *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986). In other words, even the issue of arbitrability "may be submitted to binding arbitration . . . if there has been a clear demonstration that the parties contemplated it." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980).

The pertinent portions of the 2000 agreement provide this:

> (a) If a dispute *arises out of or relates* to this Agreement, or the breach, termination or validity thereof, the parties agree to submit the dispute to a sole mediator selected by the parties or, at any time at the option of a party, to mediation by the American Arbitration Association ("AAA"). If not thus resolved, it shall be referred to a sole arbitrator selected by the parties within (30) thirty days of the mediation, or in the absence of such selection, to AAA arbitration which shall be governed by the United States Arbitration Act.
> . . .
>
> (d) The arbitrator shall be knowledgeable in the legal and technical aspects of this Agreement and *shall determine issues of arbitrability* but may not limit, expand or otherwise modify the terms of this agreement.

These provisions explicitly confer upon an arbitrator the power of determining what "arises out of or relates to" the 2000 agreement.

Still, as evidenced by this current dispute, disagreements sometime arise even where the parties speak in unequivocal terms. The Federal Circuit recently articulated an approach for handling such disputes, an approach the parties have addressed in this appeal. That court set out a two step process: (1) did the parties "unmistakably intend to delegate the power to decide arbitrability to an arbitrator," and if so, (2) is the assertion of arbitrability "wholly groundless." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006).

The district court quoted the "wholly groundless" standard but nonetheless accepted Agere's position that the arbitrator need not determine the issue of arbitrability because the 2006 agreement, which did not contain an arbitration clause, superceded the 2000 agreement. Central to this finding is Agere's assertion that the 2000 agreement, by its terms, expired on December 31, 2004. It is Agere's position that a "best efforts" provision in the 2006 agreement sets the standard for reaching a new agreement, not the 2000 agreement's "good faith" provision and its arbitration clause.

Samsung counters that, although the negotiated fee schedule was no longer effective after December 31, 2004, the 2000 agreement still governs the process the parties are obligated to follow in reaching a new agreement. Specifically, Samsung argues that the 2000 agreement imposes a continuing obligation on the parties to negotiate a future payment schedule in good faith.

Given the parties' differing positions, Samsung suggests that, if we have any doubt regarding whether the arbitration provision is applicable to the current dispute, we should resolve that doubt in favor of arbitration because of the "strong federal policy favoring arbitration" announced by Congress in the Federal Arbitration Act. *Chelsea Square Textiles v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999). Various precedents cited by Samsung support

a general proposition that the federal policy in favor of arbitration applies to resolving doubts concerning coverage of a broadly worded arbitration clause.[3] The doubt here, of course, is whether the arbitration clause is still in effect.

We adopt no new standards of Fifth Circuit analysis of arbitration provisions today. We simply conclude that there is a legitimate argument that this arbitration clause covers the present dispute, and, on the other hand, that it does not. The resolution of these plausible arguments is left for the arbitrator.

### III. Conclusion

The district court's order is REVERSED, and we REMAND with instructions to allow an arbitrator to determine the arbitrability issue.

---

[3] *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1982); *Chelsea Square Textiles*, 189 F.3d at 291; *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 259 (5th Cir. 1996).