# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 12-60877

————

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2014

Lyle W. Cayce
Clerk

SHIRLEY DOUGLAS, Successor in Interest of
Schwartz & Associates, P.A. and Interstate Fire & Casualty Company,

Plaintiff–Appellee,

versus

REGIONS BANK,

Defendant–Appellant.

————

Appeal from the United States District Court
for the Southern District of Mississippi

————

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

In August 2002, Shirley Douglas opened a checking account with Union Planters Bank and signed a signature card binding her to arbitration. The arbitration provision included a clause (the "delegation provision") delegating the question of a dispute's arbitrability to an arbitrator. Douglas's account was closed less than a year later. Union Planters Bank ("Union Planters") merged with Regions Bank ("Regions") in June 2005.

## No. 12-60877

In 2007, Douglas was injured in an automobile accident caused by the negligence of the driver of another vehicle. She retained a lawyer, settled the claim for $500,000, and hired a separate attorney, Vann Leonard, to get the settlement approved in bankruptcy court, where she had filed under Chapter 13. Leonard allegedly embezzled Douglas's portion of the settlement. Douglas sued Regions and Trustmark National Bank ("Trustmark"), where Leonard had maintained accounts, for negligence and conversion on the ground that they had notice of the embezzlement and negligently failed to report that activity, make reasonable inquiries, or prevent further diversions.

Regions moved to compel arbitration based on the delegation provision in the arbitration agreement Douglas had entered into with Union Planters, Regions' predecessor-in-interest. The district court denied the motion, and Regions appealed.[1] Although the district court applied the incorrect law, we affirm because the claim that this dispute is within the scope of the arbitration provision is groundless.

## I.

The district court denied Regions' motion to compel arbitration on the ground that no arbitration agreement existed between Douglas and Regions because under Mississippi law, Union Planters' successor-in-interest (Regions) was not a party to the arbitration agreement. Significantly, Douglas does not defend the district court's reasoning on appeal. She admits that Regions was a party to the original arbitration agreement under Mississippi law, and indeed it appears that she never argued in response to the motion to compel that Regions' status as a successor did not bind it to the agreement. The

---

[1] The district court stayed proceedings with Trustmark pending conclusion of any arbitration proceedings between Douglas and Regions.

No. 12-60877

district court apparently did not consider the applicable state law.[2]

An agreement did, in other words, exist. Douglas signed a signature card with an arbitration agreement when she opened a checking account some number of years before the subject chain of events. The question is whether the arbitration agreement and its delegation provision have anything to do with the claim at issue here—that is, whether there is an arbitration agreement *relevant* to the dispute at hand.

A delegation provision is an "agree[ment] to arbitrate 'gateway' questions of 'arbitrability,' such as . . . whether [the parties'] agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010). Parties may agree to arbitrate whether a particular claim is subject to arbitration so long as they clearly and unmistakably do so in their agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Delegation provisions thus normally require an arbitrator to decide in the first instance whether a dispute falls within the scope of the arbitration provision. There is doubt that Douglas unmistakably intended to arbitrate gateway questions of arbitrability.[3]

---

[2] "(a) When a merger becomes effective: . . . (3) All property owned by, and every contract right possessed by, each corporation or eligible entity that merges into the survivor is vested in the survivor without reversion or impairment[.]" MISS. CODE ANN. § 79-4-11.07(a)(3); *see also id.* § 81-5-2 ("All the provisions of law relating to private corporations operating in this state which are not inconsistent with this chapter or Chapters 1 and 3 of Title 81, Mississippi Code of 1972, or with the proper business of depository institutions, shall be applicable to all state banks.").

[3] The agreement states that

by using or maintaining your account, you agree that, in the event of any dispute, disagreement, claim or controversy . . . between you and us or any of our agents or employees, or our parent, subsidiary or sister corporations or their employees or agents, any such dispute will, at the election of you or us, be resolved through the process of binding arbitration . . . regardless of when the dispute arose.

It then defines "disputes" as follows (emphasis added):

3

No. 12-60877

The mere existence of a delegation provision in the checking account's arbitration agreement, however, cannot possibly bind Douglas to arbitrate gateway questions of arbitrability in *all* future disputes with the other party, no matter their origin. Suppose the driver who injured Douglas was an employee of Regions who was conducting bank business. Douglas would not have to arbitrate the underlying tort, which is unrelated to her checking account and its accompanying contract, just because she happens to have a contract with Regions on a completely different matter. It follows that she does not have to send such a claim for "gateway arbitration" merely because there is a delegation provision in the completely unrelated contract.

If it were otherwise, then every case involving an arbitration agreement with a delegation provision must, with no exceptions, be submitted for such gateway arbitration; no matter how untenable the argument that there is some connection between the dispute and the agreement, an arbitrator must decide first. Douglas would have to go to the arbitrator, who would flatly tell her that this claim is not within the scope of the completely unrelated arbitration agreement she signed many years earlier when opening a checking account and that she must actually go to federal court after all.

The law of this circuit does not require all claims to be sent to gateway arbitration merely because there is a delegation provision. In *Agere Systems, Inc. v. Samsung Electronics Co.*, 560 F.3d 337 (5th Cir. 2009), we sent a dispute to arbitration so the arbitrator could decide the gateway question of

---

"Disputes" shall have the broadest possible meaning and shall include . . . any claim, controversy or dispute arising from or relating in any way to (i) this Agreement, (ii) any related agreement (iii) any agreement that this Agreement supercedes, [and] (iv) the relationships, accounts or balances on the accounts resulting from this Agreement or such other agreements, *including the validity, enforceability, or scope of this Arbitration provision or any amendments or supplements to this Agreement*[] . . . . Disputes include[] . . . any Disputes based on . . . tort . . . (including any claims of any injury or damage to person or property), claims for breach of fiduciary duty or wrongful acts.

arbitrability because the agreement had a delegation provision. But we did so only because there were *plausible* arguments that the dispute was covered by the agreement as well as plausible arguments that it was not: "We adopt no new standards of Fifth Circuit analysis of arbitration provisions today." *Id.* "We simply conclude that there is a legitimate argument that this arbitration clause covers the present dispute, and, on the other hand, that it does not. The resolution of these plausible arguments is left for the arbitrator." *Id.*

The *Agere* court cited the test established by another circuit to decide whether a particular dispute must go to gateway arbitration because of the presence of a delegation provision:

> The Federal Circuit recently articulated an approach for handling such disputes, an approach the parties have addressed in this appeal. That court set out a two step process: (1) did the parties "unmistakably intend to delegate the power to decide arbitrability to an arbitrator," and if so, (2) is the assertion of arbitrability "wholly groundless."

*Id.* (citing *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)). The Federal Circuit elaborated on this test in a more recent opinion:

> In *Qualcomm*, we explained that the "wholly groundless" inquiry allows a court to stay an action based on an agreement among the parties to submit their disputes to arbitration, "while also preventing a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." Accordingly, "even if the court finds that the parties' intent was clear and unmistakable that they delegated arbitrability decisions to an arbitrator, the court may make a second more limited inquiry to determine whether a claim of arbitrability is 'wholly groundless.'" Because the "wholly groundless" inquiry is supposed to be limited, a court performing the inquiry may simply "conclude that there is a legitimate argument that [the] arbitration clause covers the present dispute, and, on the other hand, that it does not" and, on that basis, leave "[t]he resolution of [those] plausible arguments . . . for the arbitrator." Nevertheless, the "wholly groundless" inquiry "necessarily requires the courts to examine and, to a limited

No. 12-60877

extent, construe the underlying agreement."[4]

Although the *Agere* court did not explicitly adopt this two-part *Qualcomm* test, its holding implicitly relied on it.

The *Qualcomm* test is an attractive one and most accurately reflects the law—that what must be arbitrated is a matter of the parties' intent. *See Rent-A-Ctr.*, 561 U.S. at 80. When Douglas signed the arbitration agreement containing a delegation provision, did she intend to go through the rigmaroles of arbitration just so the arbitrator can tell her in the first instance that her claim has nothing whatsoever to do with her arbitration agreement, and she should now feel free to file in federal court? Obviously not.

If the argument that the claim at hand is within the scope of the arbitration agreement is "wholly groundless," surely Douglas never intended that such arguments would see the light of day at an unnecessary and needlessly expensive gateway arbitration. We conclude that when she agreed to arbitrate "the validity, enforceability, or scope of this Arbitration provision," Douglas did not intend to bind herself for life to gateway arbitration for any and all claims that ever might exist between her and Regions. She meant only to bind herself to arbitrate gateway questions of arbitrability if the argument that the dispute falls within the scope of the agreement is not wholly groundless.

Because the events leading to Douglas's claim—a car accident, a settlement, and embezzlement of the funds through an account that a third party held with the bank—have nothing to do with her checking account opened years earlier for only a brief time, the notion that her claim falls within the scope of the arbitration agreement is "wholly groundless." Regions' only theory that its claim of arbitrability is not wholly groundless is that there is a

---

4 *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 718 F.3d 1336, 1346–47 (Fed. Cir. 2013) (internal citations omitted) (brackets and ellipses in original), *vacated on other grounds*, 134 S. Ct. 1876 (2014) (vacating on mootness grounds).

delegation provision. That is circular: The two-part *Qualcomm/Agere* test demands that even *if* there is a delegation provision (step one), the court must ask whether the averment that the claim falls within the scope of the arbitration agreement is wholly groundless (step two). Merely restating that there is a delegation provision brings us back to step one.

Because this matter should not be sent to gateway arbitration, the judgment denying the motion to compel arbitration is AFFIRMED.

No. 12-60877

JAMES L. DENNIS, Circuit Judge, dissenting:

The majority adopts the "wholly groundless" test put forth by the Federal Circuit, which has not been adopted by this circuit and appears to be contrary to Supreme Court authority. Although I am sympathetic to the plight of ordinary persons caught in the throes of commercial arbitration, I do not think the Supreme Court's decisions allow us this innovation. Accordingly, I respectfully dissent.

I agree with the majority's decision that an agreement to arbitrate existed between the parties and that this agreement contained a delegation provision. Douglas previously signed a "signature card" for a checking account with Union Planters, which was later acquired by Regions. By signing the card, Douglas indicated her consent to the Deposit Account Agreement and Disclosure ("the Agreement") and that she had been provided at least one copy of this document. As the majority acknowledges, the Agreement provides that disputes "including the validity, enforceability, or *scope* of this Arbitration provision" are to be decided through arbitration. Specifically, the Agreement states that

> by using or maintaining your account, you agree that, in the event of any dispute, disagreement, claim or controversy . . . between you and us or any of our agents or employees, or our parent, subsidiary or sister corporations or their employees or agents, any such dispute will, at the election of you or us, be resolved through the process of binding arbitration . . . regardless of when the dispute arose.

The Agreement defines "disputes" as follows:

> "Disputes" shall have the broadest possible meaning and shall include . . . any claim, controversy or dispute arising from or relating in any way to (i) this Agreement, (ii) any related agreement (iii) any agreement that this Agreement supercedes, [and] (iv) the relationships, accounts or balances on the accounts resulting from this Agreement or such other agreements, including the validity, enforceability, or scope of this Arbitration

8

No. 12-60877

provision or any amendments or supplements to this Agreement[] . . . . Disputes include[] . . . any Disputes based on . . . tort . . . (including any claims of any injury or damage to person or property), claims for breach of fiduciary duty or wrongful acts.

The Agreement includes a separability provision; provides that "[t]his Agreement shall be governed by and construed in accordance with all applicable federal laws and all applicable substantive laws of the State of Mississippi"; provides that "[t]his Arbitration Provision . . . shall be governed by the Federal Arbitration Act" ("FAA"); and states that it "will remain in effect if you close your account or accounts with us and is irrevocable." Finally, the Agreement provides that arbitration "will be administered according to this agreement and the rules of the American Arbitration Association ('AAA') in effect at the time of filing."

Douglas asserts, and the majority agrees, that her negligence and conversion claims against Regions are not within the scope of the arbitration clause because they do not relate to the Agreement's arbitration provision. Regardless of the merit of her argument, however, the issue is not for us to decide. The Agreement contains a delegation clause, or, stated differently, an "agree[ment] to arbitrate 'gateway' questions of 'arbitrability,' such as . . . whether [the parties'] agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010). Consequently, Douglas's argument that her claims do not relate to the Agreement's arbitration provision—in essence, a scope-of-coverage dispute—must be decided in the first instance by the arbitrator, not a court.

## I.

Ordinarily, whether a claim is subject to arbitration must be decided in the first instance by a court, not an arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Parties may agree, however, to arbitrate whether a particular claim is subject to arbitration so long as they

9

clearly and unmistakably do so in their agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). In this case, that standard is satisfied.

First, the Agreement, by defining the claims subject to arbitration to include "the validity, enforceability, or scope of th[e] Arbitration provision," includes what the Supreme Court has described as a delegation clause. *See Rent-A-Center*, 130 S. Ct. at 2777. The Court explained that a delegation clause "is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.* The Court "ha[s] recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* The Supreme Court has also held that the existence of such a delegation clause, by defining the claims subject to arbitration to include any challenge to the validity, enforceability, or scope of the parties' agreement to arbitrate, is sufficiently clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See id.* Second, the Agreement incorporates the AAA Rules—including the rule empowering the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"—which this court has deemed sufficient to satisfy *First Option*'s test. *See Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). I therefore would conclude that there is clear and unmistakable evidence that the parties to the Agreement agreed to arbitrate arbitrability.

Accordingly, Douglas's argument that her negligence and conversion claims against Regions are outside the scope of the Agreement raises "the question 'who has the primary power to decide arbitrability' [which] turns upon what the parties agreed about *that* matter." *See First Options*, 513 U.S. at 943. Douglas admits that she entered into an agreement to arbitrate with Union Planters. She does not challenge that Regions is Union Planter's successor-in-

No. 12-60877

interest, admitting that she cannot defend the district court's ruling on this point.  Nor does she dispute that the Agreement contains a delegation clause and incorporates the AAA Rules.  Nor does she specifically challenge the delegation provision.[1]  As such, whether particular claims—namely, her negligence and conversion claims against Regions—are subject to arbitration is a question of the arbitration clause's *scope* and, under both the delegation clause and the AAA rules, one for the arbitrator, not a court, to decide in the first instance.  Although she could ultimately persuade the arbitrator to conclude that her claim against Regions falls outside the scope of the arbitration agreement, that dispute must be submitted in the first instance to the arbitrator.

**II.**

Douglas's arguments to the contrary are unavailing.  First, she argues that the text of the FAA requires a connection between her dispute with Regions and the Agreement's arbitration provision.  FAA § 2 provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter *arising out of such contract or transaction*, or the refusal to perform the whole or any part thereof[] . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).  By comparison, Douglas asserts that New York's arbitration statute, on which the FAA was modeled, *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 589 n.7 (2008), authorizes arbitration of any subsequent dispute between the parties regardless of whether it is connected to the contract containing the parties' agreement to arbitrate, *see*

---

[1] If she had specifically challenged the validity of the Agreement's delegation provision, her challenge would have been for the court, and not the arbitrator, to decide.  *See Rent-A-Center*, 130 S. Ct. at 2779.

11

N.Y. C.P.L.R. § 7501.  On this basis, Douglas asserts that whereas the New York law applies to any subsequent dispute between the parties, the FAA requires that for a dispute to be arbitrable it must arise out of the contract containing the parties' agreement to arbitrate.

Beyond citing the texts of the FAA and New York's arbitration statute, however, Douglas cites no authority for her interpretation and, moreover, wholly ignores the Supreme Court's interpretation of the FAA in cases such as *Rent-A-Center* and *First Options*.  More fundamentally, Douglas's argument is that, *based on the language of the Agreement's arbitration clause*, her dispute with Regions is not subject to arbitration.  However, we are not authorized to decide whether her dispute with Regions is arbitrable; rather, such a question must be decided in the first instance by the arbitrator because she did not specifically challenge the validity of the Agreement's delegation provision.  *See Rent-A-Center*, 130 S. Ct. at 2779; *First Options*, 514 U.S. at 943-44.

Douglas's objection to the conclusion that she must direct her scope-of-coverage argument to the arbitrator in the first instance misapprehends the relevant analysis.  She complains that Regions' argument is, essentially, that if two parties ever agree to arbitration, then they are bound to arbitrate any later dispute regardless of whether the dispute is related to the parties' agreement to arbitrate.  That is not the case.  The foregoing analysis does not require that parties arbitrate disputes unrelated to their agreement to arbitrate.  After all, such a dispute may well fall outside the scope of the parties' agreement.  Rather, when the parties clearly and unmistakably agree to arbitrate arbitrability, questions regarding the scope of the parties' agreement to arbitrate must be addressed in the first instance by the arbitrator, not a court.  *See Rent-A-Center*, 130 S. Ct. at 2779; *First Options*, 514 U.S. at 943-4.

No. 12-60877

**III.**

Despite the Agreement's uncontested provision that questions of the Agreement's *scope* are to be decided by an arbitrator, the majority holds that "the notion that [Douglas's] claim falls within the scope of the arbitration agreement is 'wholly groundless.'" Although the majority refers to the "wholly groundless" test as the "*Qualcomm/Agere* test," it has not hitherto been the law of this circuit, *see Agere Sys., Inc. v. Samsung Elecs. Co. Ltd.*, 560 F.3d 337, 340 (5th Cir. 2009) ("We adopt no new standards of Fifth Circuit analysis of arbitration provisions today.").

In *Agere Systems*, Agere sued Samsung, alleging a breach of a patent licensing agreement, and Samsung moved to compel arbitration. *Id.* at 338. The district court denied Samsung's motion, reasoning that although the parties had agreed to arbitrate in a 2000 contract, that agreement was no longer in effect because it had been superseded by a 2006 contract that did not contain an arbitration clause. *Id.* at 339. Based on the terms of the parties' 2000 agreement, the court determined that the parties had agreed to "confer upon an arbitrator the power of determining what [disputes] 'arise[] out of or relate[] to' the [relevant agreement to arbitrate]." *Id.* at 340. That is, the court concluded that the parties had agreed to arbitrate arbitrability. *See id.* Because the court concluded that there was both a legitimate argument that the arbitration clause does and does not cover the dispute, it remanded the case with instructions to allow an arbitrator to determine the arbitrability issue. *Id.* at 340-41. The *Agere* court recited the Federal Circuit's "wholly groundless" test, but it did so merely to acknowledge that the parties had addressed the approach in their appeals and to note that the district court had not applied the test. *See id.* at 340. Thus, the "wholly groundless" test has never before been adopted by this court and, as in *Agere*, it was not considered by the district court in this case.

13

Moreover, the "wholly groundless" test appears to be contrary to Supreme Court precedent. In *AT&T*, a labor arbitration case, the Court reaffirmed the rule that, absent clear and unmistakable evidence to the contrary, arbitrability is for the court to decide. 475 U.S. at 649. The Court admonished, however, that

> in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

*Id.* at 649-50 (internal quotation marks omitted). In *First Options*, the Court relied on *AT&T* by analogy in stating that district courts must defer to an arbitrator's arbitrability decision upon finding clear and unmistakable evidence that the parties so intended. 514 U.S. at 943-44.

In *AT&T*, arbitrability was for the court to decide, but the merits were for the arbitrator, so the Supreme Court explained that a court deciding arbitrability should leave the merits of the underlying dispute for the arbitrator. 475 U.S. at 649-50. In other words, if a court decides that a dispute is arbitrable but believes it to be completely frivolous, the court must still order the parties to arbitrate the claim. *See id.* Similarly, if there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability, the court must direct the parties to submit arbitrability questions to the arbitrator and may not pass on "the merits" of the dispute, which, in this posture, is whether Douglas's dispute with Regions is subject to arbitration. The "wholly

groundless" test, however, requires a court to delve into the merits of the dispute, which the *AT&T* Court said a district court may not do. Under the reasoning of *AT&T* and *First Options*, if a court determines that there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability but nevertheless believes that an underlying claim is almost certainly not subject to arbitration, the court must still order the parties to arbitrate arbitrability. *See AT&T*, 475 U.S. at 649-50; *First Options*, 514 U.S. at 943-44. Similarly, *First Options* and *Rent-A-Center* provide that an arbitration agreement's delegation provision requires sending questions of arbitrability to the arbitrator absent a specific challenge to the validity of that provision (which Douglas has not here asserted). *See Rent-A-Center*, 130 S. Ct. at 2779; *First Options*, 514 U.S. at 943-44. These decisions further support the conclusion that the Supreme Court would likely reject the majority's approach as being contrary to its previous decisions.

For these reasons, I respectfully dissent.

15