JAMES L. DENNIS, Circuit Judge,
dissenting:
The majority adopts the “wholly groundless” test put forth by the Federal Circuit, which has not been adopted by this circuit and appears to be contrary to Supreme Court authority. Although I am sympathetic to the plight of ordinary persons caught in the throes of commercial arbitration, I do not think the Supreme Court’s decisions allow us this innovation. Accordingly, I respectfully dissent.
I agree with the majority’s decision that an agreement to arbitrate existed between the parties and that this agreement contained a delegation provision. Douglas previously signed a “signature card” for a checking account with Union Planters, which was later acquired by Regions. By signing the card, Douglas indicated her consent to the Deposit Account Agreement and Disclosure (“the Agreement”) and that she had been provided at least one copy of this document. As the majority acknowledges, the Agreement provides that disputes “including the validity, enforceability, or scope of this Arbitration provision” are to be decided through arbitration. Specifically, the Agreement states that
by using or maintaining your account, you agree that, in the event of any dispute, disagreement, claim or controversy ... between you and us or any of our agents or employees, or our parent, subsidiary or sister corporations or their *465 employees or agents, any such dispute will, at the election of you or us, be resolved through the process of binding arbitration ... regardless of when the dispute arose.
The Agreement defines “disputes” as follows:
“Disputes” shall have the broadest possible meaning and shall include ... any claim, controversy or dispute arising from or relating in any way to (i) this Agreement, (ii) any related agreement (iii) any agreement that this Agreement supercedes, [and] (iv) the relationships, accounts or balances on the accounts resulting from this Agreement or such other agreements, including the validity, enforceability, or scope of this Arbitration provision or any amendments or supplements to this Agreement ].... Disputes include[ ] ... any Disputes based on ... tort ... (including any claims of any injury or damage to person or property), claims for breach of fiduciary duty or wrongful acts.
The Agreement includes a separability provision; provides that “[t]his Agreement shall be governed by and construed in accordance with all applicable federal laws and all applicable substantive laws of the State of Mississippi”; provides that “[t]his Arbitration Provision ... shall be governed by the Federal Arbitration Act” (“FAA”); and states that it “will remain in effect if you close your account or accounts with us and is irrevocable.” Finally, the Agreement provides that arbitration “will be administered according to this agreement and the rules of the American Arbitration Association (‘AAA’) in effect at the time of filing.”
Douglas asserts, and the majority agrees, that her negligence and conversion claims against Regions are not within the scope of the arbitration clause because they do not relate to the Agreement’s arbitration provision. Regardless of the merit of her argument, however, the issue is not for us to decide. The Agreement contains a delegation clause, or, stated differently, an “agree[ment] to arbitrate ‘gateway’ questions of ‘arbitrability,’ such as ... whether [the parties’] agreement covers a particular controversy.” Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 130 S.Ct. 2772, 2777, 177 L.Ed.2d 403 (2010). Consequently, Douglas’s argument that her claims do not relate to the Agreement’s arbitration provision — in essence, a seope-of-coverage dispute — must be decided in the first instance by the arbitrator, not a court.
I.
Ordinarily, whether a claim is subject to arbitration must be decided in the first instance by a court, not an arbitrator. AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Parties may agree, however, to arbitrate whether a particular claim is subject to arbitration so long as they clearly and unmistakably do so in their agreement. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943-44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In this case, that standard is satisfied.
First, the Agreement, by defining the claims subject to arbitration to include “the validity, enforceability, or scope of th[e] Arbitration provision,” includes what the Supreme Court has described as a delegation clause. See Rent-A-Center, 130 S.Ct. at 2777. The Court explained that a delegation clause “is an agreement to arbitrate threshold issues concerning the arbitration agreement.” Id. The Court “ha[s] recognized that parties can agree to arbitrate ‘gateway’ questions of ‘arbitrability,’ such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.” Id. The Supreme Court has also held that the *466 existence of such a delegation clause, by-defining the claims subject to arbitration to include any challenge to the validity, enforceability, or scope of the parties’ agreement to arbitrate, is sufficiently clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. See id. Second, the Agreement incorporates the AAA Rules — including the rule empowering the arbitrator “to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement”— which this court has deemed sufficient to satisfy First Option’s test. See Petrofac, Inc. v. DynMcDermott Petrol. Operations Co., 687 F.3d 671, 675 (5th Cir.2012). I therefore would conclude that there is clear and unmistakable evidence that the parties to the Agreement agreed to arbitrate arbitrability.
Accordingly, Douglas’s argument that her negligence and conversion claims against Regions are outside the scope of the Agreement raises “the question ‘who has the primary power to decide arbitrability’ [which] turns upon what the parties agreed about that matter.” See First Options, 514 U.S. at 948, 115 S.Ct. 1920. Douglas admits that she entered into an agreement to arbitrate with Union Planters. She does not challenge that Regions is Union Planter’s successor-in-interest, admitting that she cannot defend the district court’s ruling on this point. Nor does she dispute that the Agreement contains a delegation clause and incorporates the AAA Rules. Nor does she specifically challenge the delegation provision.[1] As such, whether particular claims — namely, her negligence and conversion claims against Regions — are subject to arbitration is a question of the arbitration clause’s scope and, under both the delegation clause and the AAA rules, one for the arbitrator, not a court, to decide in the first instance. Although she could ultimately persuade the arbitrator to conclude that her claim against Regions falls outside the scope of the arbitration agreement, that dispute must be submitted in the first instance to the arbitrator.
II.
Douglas’s arguments to the contrary are unavailing. First, she argues that the text of the FAA requires a connection between her dispute with Regions and the Agreement’s arbitration provision. FAA § 2 provides:
A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof[ ] ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2 (emphasis added). By comparison, Douglas asserts that New York’s arbitration statute, on which the FAA was modeled, Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 589 n. 7, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), authorizes arbitration of any subsequent dispute between the parties regardless of whether it is connected to the contract containing the parties’ agreement to arbitrate, see N.Y. C.P.L.R. § 7501. On this basis, Douglas asserts that whereas the New York law applies to any subsequent dispute between the parties, the FAA requires that for a dispute to be arbitrable it must arise out of the contract containing the parties’ agreement to arbitrate.
*467 Beyond citing the texts of the FAA and New York’s arbitration statute, however, Douglas cites no authority for her interpretation and, moreover, wholly ignores the Supreme Court’s interpretation of the FAA in eases such as Rentr-A-Center and First Options. More fundamentally, Douglas’s argument is that, based on the language of the Agreement’s arbitration clause, her dispute with Regions is not subject to arbitration. However, we are not authorized to decide whether her dispute with Regions is arbitrable; rather, such a question must be decided in the first instance by the arbitrator because she did not specifically challenge the validity of the Agreement’s delegation provision. See Rent-A-Center, 130 S.Ct. at 2779; First Options, 514 U.S. at 943-44, 115 S.Ct. 1920.
Douglas’s objection to the conclusion that she must direct her scope-of-coverage argument to the arbitrator in the first instance misapprehends the relevant analysis. She complains that Regions’ argument is, essentially, that if two parties ever agree to arbitration, then they are bound to arbitrate any later dispute regardless of whether the dispute is related to the parties’ agreement to arbitrate. That is not the case. The foregoing analysis does not require that parties arbitrate disputes unrelated to their agreement to arbitrate. After all, such a dispute may well fall outside the scope of the parties’ agreement. Rather, when the parties clearly and unmistakably agree to arbitrate arbi-trability, questions regarding the scope of the parties’ agreement to arbitrate must be addressed in the first instance by the arbitrator, not a court. See Rent-A-Center, 130 S.Ct. at 2779; First Options, 514 U.S. at 943-M, 115 S.Ct. 1920.
III.
Despite the Agreement’s uncontested provision that questions of the Agreement’s scope are to be decided by an arbitrator, the majority holds that “the notion that [Douglas’s] claim falls within the scope of the arbitration agreement is ‘wholly groundless.’ ” Although the majority refers to the “wholly groundless” test as the “Qualcomm/Agere test,” it has not hitherto been the law of this circuit, see Agere Sys., Inc. v. Samsung Elecs. Co. Ltd., 560 F.3d 337, 340 (5th Cir.2009) (“We adopt no new standards of Fifth Circuit analysis of arbitration provisions today.”).
In Agere Systems, Agere sued Samsung, alleging a breach of a patent licensing agreement, and Samsung moved to compel arbitration. Id. at 338. The district court denied Samsung’s motion, reasoning that although the parties had agreed to arbitrate in a 2000 contract, that agreement was no longer in effect because it had been superseded by a 2006 contract that did not contain an arbitration clause. Id. at 339. Based on the terms of the parties’ 2000 agreement, the court determined that the parties had agreed to “confer upon an arbitrator the power of determining what [disputes] ‘arise[ ] out of or relate[ ] to’ the [relevant agreement to arbitrate].” Id. at 340. That is, the court concluded that the parties had agreed to arbitrate arbitrability. See id. Because the court concluded that there was both a legitimate argument that the arbitration clause does and does not cover the dispute, it remanded the case with instructions to allow an arbitrator to determine the arbitrability issue. Id. at 340-41. The Agere court recited the Federal Circuit’s “wholly groundless” test, but it did so merely to acknowledge that the parties had addressed the approach in their appeals and to note that the district court had not applied the test. See id. at 340. Thus, the “wholly groundless” test has never before been adopted by this court and, as in Agere, it was not considered by the district court in this case.
*468 Moreover, the “wholly groundless” test appears to be contrary to Supreme Court precedent. In AT & T, a labor arbitration case, the Court reaffirmed the rule that, absent clear and unmistakable evidence to the contrary, arbitrability is for the court to decide. 475 U.S. at 649, 106 S.Ct. 1415. The Court admonished, however, that •
in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether “arguable” or not, indeed even if it appears to the court to be frivolous, the union’s claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.
Id. at 649-50, 106 S.Ct. 1415 (internal quotation marks omitted). In First Options, the Court relied on AT & T by analogy in stating that district courts must defer to an arbitrator’s arbitrability decision upon finding clear and unmistakable evidence that the parties so intended. 514 U.S. at 943-44, 115 S.Ct. 1920.
In AT & T, arbitrability was for the court to decide, but the merits were for the arbitrator, so the Supreme Court explained that a court deciding arbitrability should leave the merits of the underlying dispute for the arbitrator. 475 U.S. at 649-50, 106 S.Ct. 1415. In other words, if a court decides that a dispute is arbitrable but believes it to be completely frivolous, the court must still order the parties to arbitrate the claim. See id. Similarly, if there is clear and unmistakable evidence that the parties agreed to arbitrate arbi-trability, the court must direct the parties to submit arbitrability questions to the arbitrator and may not pass on “the merits” of the dispute, which, in this posture, is whether Douglas’s dispute with Regions is subject to arbitration. The “wholly groundless” test, however, requires a court to delve into the merits of the dispute, which the AT & T Court said a district court may not do. Under the reasoning of AT & T and First Options, if a court determines that there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability but nevertheless believes that an underlying claim is almost certainly not subject to arbitration, the court must still order the parties to arbitrate arbitrability. See AT & T, 475 U.S. at 649-50, 106 S.Ct. 1415; First Options, 514 U.S. at 943-44, 115 S.Ct. 1920. Similarly, First Options and RenP-A-Center provide that an arbitration agreement’s delegation provision requires sending questions of arbitrability to the arbitrator absent a specific challenge to the validity of that provision (which Douglas has not here asserted). See Rent-A-Center, 130 S.Ct. at 2779; First Options, 514 U.S. at 943-44, 115 S.Ct. 1920. These decisions further support the conclusion that the Supreme Court would likely reject the majority’s approach as being contrary to its previous decisions.
For these reasons, I respectfully dissent.

. If she had specifically challenged the validity of the Agreement's delegation provision, her challenge would have been for the court, and not the arbitrator, to decide. See Rent-A-Center, 130 S.Ct. at 2779.